IN THE CIRCUIT COURT OF THE 11ᵗʰ JUDICIAL
CIRCUIT OF FLORIDA, IN AND FOR MIAMI -
DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NUMBER: **2023-014683-CA-01**

BRANDON LANIER,

                Plaintiff,

v.

CITY OF MIAMI, a Florida Municipal Corporation.

                Defendant.

_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff **BRANDON LANIER ("LANIER"), files this Amended Complaint** by and through

undersigned Counsel, and sues the **CITY OF MIAMI, FLORIDA ("CITY"),** a Florida Municipal

Corporation, for damages, demands a jury trial, and states as follows:

## INTRODUCTION

**BRANDON LANIER** realized his dream of serving and protecting the public by becoming a

sworn law enforcement officer in the **CITY OF MIAMI,** Florida. He rose through the police ranks to

become the **CITY's** Commander with the Internal Affairs Section. **BRANDON'S** professional life as a

police officer had always followed the path of righteousness, truthfulness, and integrity. However, he saw

his law enforcement career and reputation destroyed after he came forward with information about

corruption and wrongdoing. The **CITY** and its officials relentlessly pursued retaliation and vengeance

against him after he initiated and cooperated in an investigation of, among other things, illegality, and

corruption in the Local Government, especially in the area of manipulation and improper influence in

the conduct of Internal Affairs Investigations. This lawsuit seeks to vindicate his rights as protected by Florida Statute 112.3187 because the Plaintiff was subjected to adverse actions and retaliation for his whistleblowing activities. In addition, the City explicitly discriminated against the Plaintiff on the basis of his race by targeting him for adverse action because he is a black male, while providing more favorable treatment to white officers. The City also retaliated against Plaintiff when he reported the City's violations of Title VII.

## NATURE OF ACTION AND JURISDICTION

1. **LANIER** brings this action seeking damages in excess of $1,000,000.00 and other allowable relief as a result of being subjected to adverse personnel action by the **CITY** in punishing him for having the integrity to disclose acts of illegality, misconduct, and malfeasance by **CITY** officials, as well as his participation in investigations of CITY-involved misconduct as outlined in this Complaint.

2. The CITY also violated his Civil Rights under Title VII by targeting and discriminating against him because of his race, black male.

3. The CITY then retaliated against the Plaintiff, also in violation of Title VII by subjecting him to adverse action because he explicitly complained about the City of Miami's violations of Title VII.

4. Plaintiff is *sui Juris,* a resident of Broward County, Florida, and an employee of the **CITY of MIAMI, FLORIDA.** Plaintiff is a black male.

5. The **CITY OF MIAMI** is a municipal government entity organized under the Constitution and laws of Florida, and as such is an "agency" within the scope of Section 121.3187(3)(a) Florida Statutes.

6. Venue is proper in this judicial circuit because Defendant **CITY OF MIAMI** is located within Miami-Dade County, Florida;

7. All conditions precedent to this cause of action have been met, waived, excused, occurred, or

would be otherwise futile. Plaintiff has exhausted all administrative remedies.

## **GENERAL ALLEGATIONS**

8.      At all material times to this action, **LANIER** was a Commander with the Internal Affairs Section

for the **CITY.**

9.      He previously served has served as a Police Officer, Police Sergeant, Police Lieutenant, and Police

Commander. During that entire time, he had a well-deserved reputation for honesty and integrity.

10.    **LANIER** was hired by the **CITY** as a sworn police officer in 2008.

11.    He served most of his tenure achieving this status through hard work and dedication to his

profession as a law enforcement officer and public servant.

12.    During his career as a law enforcement officer for the **CITY, LANIER** had never received

disciplinary action until Manuel Morales was sworn in as Chief of Police.

13.    On October 14, 2021, once Manuel Morales was made Chief, everything changed for the worse.

14.    **LANIER** and Detective Wanda Jean-Baptiste were assigned to investigate an official misconduct

investigation involving two staff members, Ronald and Nerly Papier.

15.    The findings of this investigation concluded that Ronald Papier was directing staff members with

no standard operating procedures.

16.    Nerly Papier was discovered to have been involved in an unreported police crash, endangered

pedestrians, and is seen on video footage driving in a reckless manner, further endangering the

public.

17.    Ronald Papier was found to have been dishonest. The whole chain of events leading up to the

discovery of this investigation prompted the case to be turned over to Internal Affairs for further

investigation.

18.    Ronald and Nerly Papier were eventually terminated by the Chief of Police with approval of the

City Manager. Several months after their termination, they filed a complaint with the Civilian Investigative Panel (CIP) who then forwarded the complaint to Internal Affairs.

19.     During the course of the investigation Plaintiff Lanier investigated and made findings regarding malfeasance and misfeasance by current Chief of Police Morales resulting in a formal reprimand which Morales agreed to.

20.     During the course of these proceedings, Lanier filed written complaints concerning the malfeasance, misfeasance and improper conduct of both Papiers and Morales and participated in investigations of same, reporting the conduct to the City Manager and others.

21.     Once Chief Art Acevedo was terminated, Chief Manuel Morales became the interim Chief of Police. Chief Morales overturned many decisions former Chief Art Acevedo made regarding decisions on Internal Affair investigations and Staff Level positions.

22.     Frivolous allegations were then made accusing Plaintiff **LANIER** and Detective Jean Baptiste of violating the departmental policy and Florida's Officer Bill of Rights.

23.     Plaintiff **LANIER** and Detective Jean Baptiste exercised their rights for being violated under FSS 112.532 and requested compliance hearings against Commander Bianca Joseph and several other investigators.

24.     This requested investigation was to force the **CITY** to interview any and all witnesses in the allegations made against the Plaintiff **LANIER** and Detective Jean Baptiste as required by the Police Officers Bill of Rights.

25.     The Plaintiff and Detective Jean Baptiste were ready to provide their statements as instructed to put the facts on record yet there were more individuals to be interviewed by the **CITY.**

26.     Commander Bianca Joseph challenged Plaintiff **LANIER** and Jean Baptiste's requests to have the **CITY** conduct an interview as she found them not being relevant to the investigation, which was contrary to the Police Officer Bill of Rights.

27.     The **CITY** responded by stating they were only interviewing who they thought were "relevant" witnesses and they were not going to get a statement from either Plaintiff **LANIER** or Detective Jean Baptiste, deliberately canceling their statements preventing them from providing evidence and defending themselves which is a right provided by the Police Officers Bill of Rights.

28.     Chief Morales was named as a witness during the Plaintiffs request for a compliance hearing but is the same person who denied his request for transparency and justice.

29.     The Plaintiff and Detective Jean Baptiste still wanted to proceed by giving voluntary statements and the **CITY** refused to obtain it.

30.     The **CITY** only then issued both the Plaintiff and Detective Jean Baptiste letters of intent to discipline, up to termination in retaliation for the Plaintiff coming forward with information about corruption and wrongdoing involving Chief Manuel Morales and others from within the department.

31.     The **CITY** retaliated and discriminated against the Plaintiff as they restricted his right to counsel and restricted his right to specific witnesses. The **CITY** denied the Plaintiff the right to utilize his paid attorney from the South Florida Police Benevolent Association, an attorney who was allowed by the **CITY** multiple times to defend Anglo/Hispanic non-black officers in the exact same type of proceeding.

32.     The **CITY** retaliated against the Plaintiff as they escorted said attorney Griska Mena who was listed as a witness out of the building to prevent her from having any influence on the proceedings.

33.     The **CITY** allowed its employees to abuse their power and authority and intimidate the Plaintiff by allowing the complainant of their investigation Nerly Papier to attend the employee hearing and intimidate the Plaintiff, yet Plaintiffs attorney was not allowed to attend.

34.     Due to the Plaintiffs involvement in overseeing the investigation of Ronald and Nerly Papier, overseeing the investigation of a Seargeant-at-Arms Luis Camacho, and coming forward with

information about corruption and wrongdoing involving Chief Manuel Morales and others from within the department, he has been retaliated against.

35. Ronald and Nerly Papier were reinstated once Chief Acevedo was terminated and Chief Morales repromoted everyone who was demoted under Chief Acevedo's leadership.

36. The **CITY** has retaliated against the Plaintiff for simply obeying the law and doing his job. This retaliation for him reporting corruption and cooperating in investigations has included reprimands, demotions, insisting that he not be reinstated, denial of benefits, and even using CITY resources to contact Federal Law enforcement agencies to black list him from employment solely because he is a whistleblower.

37. Chief Morales retaliated against Plaintiff by creating a hostile work environment for him, making it impossible for him to co-exist amongst other staff members.

38. **LANIER** was demoted from Commander to Lieutenant.

39. **LANIER's** demotion from his position as Commander resulted from his refusal to turn a blind eye to the untrue statements made against him by the Papiers and Chief Morales. His demotion was an act of retaliation by the **CITY OF MIAMI** and Chief Manuel Morales.

40. Chief Morales retaliated against the Plaintiff by being deliberately untruthful on an official document, in his basis for the Plaintiff's demotion citing untruthful reasons for his demotion.

41. Chief Morales retaliated against Plaintiff by abusing his power and authority and issued excessive discipline as well as double discipline, by issuing the Plaintiff a 240 hour suspension for the exact same reason he demoted the Plaintiff for 3 months prior. This excessive/double discipline occurred AFTER the Plaintiff appeared at his whistleblower hearing against Chief Morales and the **CITY OF MIAMI.**

42. Chief Morales retaliated against and humiliated the Plaintiff at the whistleblower hearing by testifying under oath to untruthful reasons for his decision to demote the Plaintiff.

43.    Chief Morales threatened further retaliation against the Plaintiff at Plaintiff's whistleblower hearing against the **CITY OF MIAMI,** by publicly stating to the media that there will be consequences for Plaintiff's testimony at the hearing.

44.    Chief Morales retaliated and humiliated the Plaintiff at Plaintiff's whistleblower hearing against the **CITY OF MIAMI,** by publicly stating to the media that the Plaintiff was handpicked by Chief Acevedo to do his bidding. Chief Morales made this statement having full knowledge that the Plaintiff was not found to have violated any allegation placed against him by Ronald Papier.

45.    The **CITY,** in conjunction with Chief Morales has tarnished the reputation of Plaintiff **LANIER** and has truly made his job much more challenging to deal with for simply obeying and upholding the law.

46.    The Plaintiff reported malfeasance, misconduct, and illegality in written and signed complaints.

47.    The Plaintiff refused to cooperate in improper adverse action.

48.    The Plaintiff participated in investigations of malfeasance, misfeasance, and illegality.

49.    The Plaintiff specifically reported corruption in terms of improper efforts by Chief Morales and others to influence the impartiality of **CITY OF MIAMI** Internal Affairs Investigations.

50.    These improper attempts to influence Internal Affairs investigations were reported in written complaints and sworn testimony.

51.    The Plaintiff was subjected to adverse employment action in response to and in direct correlation of his protected activities.

52.    The Plaintiff has suffered damages.

53.    The Plaintiff has exhausted his administrative remedies.

## EXPLICIT PROTECTED ACTIVITIES

54.   The Plaintiff participated in the following investigations which constituted protected activity under Chapter 112.387 because they both involved participation in investigations of misfeasance, malfeasance, and illegal conduct, and they constituted refusals to participate in adverse action and because they constituted written complaints of misfeasance, malfeasance, and misconduct.

## THE JAVIER ORTIZ INVESTIGATION

55.   Plaintiff was directed by Chief Morales to conduct an investigation with direction to make a finding of guilt and recommend termination.

56.   On approximately November 8, 2021, Chief Morales explicitly directed the Plaintiff to make a determination of Ortiz in violation of standard rules and regulations.

57.   Ultimately, Plaintiff informed Chief Morales **verbally** and **in writing** that this was improper and in fact refused Chief Morales's direct order that nothing less than termination be accepted.

58.   Ultimately, Chief Morales terminated Ortiz.

59.   Chief Morales has acknowledged that his conduct was improper by reinstating Ortiz and providing him with a $750,000 settlement. **(See Exhibit "A")**

## THE CHIEF MORALES INVESTIGATION

60.   On May 19, 2021, the Plaintiff made a determination recommend then Assistant Chief Morales for malfeasance and misconduct which is attached as **Exhibit "B"**.

61.   Specifically, then Assistant Chief Morales on May 19, 2021, admitted that he engaged in improper misconduct by failing to inquire about the details of a crash that was not properly reported.

62.   Immediately upon becoming Chief of Police, Morales retaliated against misconduct by demoting the Plaintiff's and restricting Plaintiff's due process right.

## OTHER PROTECTED WHISTLEBLOWER ACTIVITIES

63. Attached as **Exhibit C** is a memorandum from the Plaintiff to then Assistant Chief Morales explicitly reporting corruption, malfeasance, and misconduct involving internal affairs and other staff.

64. **Exhibit C** is a signed and written complaint dated October 13, 2021, to Chief Morales which previously been addressed to Acevedo outlining misfeasance and malfeasance. This written and signed complaint explicitly reported misfeasance and misconduct to include not investigating internal affairs complaints and cover-up of misconduct complaints.

65. As a result of the activities, the Plaintiff was ostracized.

66. Attached as **Exhibit D** is a memorandum from the Plaintiff explicitly informing the City of acts of corruption for which Plaintiff was later demoted from Commander to Lieutenant for direct reporting of retaliation.

## ILLEGAL DISCRIMINATION BASED ON RACE IN VIOLATION OF TITLE VII

67. Title VII of the Civil Rights Act of 1964, Title 42, United States Code, Section 2000e-16 prohibits discrimination based race and retaliation for reporting Title VII violations;

68. Lanier is a Black male.

69. On or about January/February 2022, two separate internal investigations were lodged against the Plaintiff involving himself and Detective Wanda Jean-Baptiste (a Black Haitian/Non-Hispanic female) and Major Antonio Diaz (Hispanic/Non-Black) being investigated for 'misconduct,

70. The second case involved the Plaintiff (black male), Sergeant Anthony Perez (Hispanic/Non-Black) and Detective Rafal Kawiorski (Polish/Non-Black) being investigated for 'misconduct.'

71. Throughout both investigations, Plaintiff Lanier's white counterparts received preferential treatment

throughout the investigative process, evidencing an ongoing pattern of discrimination against black employees by the City;

72.    For example, the white officers were allowed to provide statements whereas the black officers, including Lanier, were not allowed to provide a statement.

73.    During the course of the investigation into Case #C21-286, Plaintiff Lanier and Wanda Jean-Baptiste advised Internal Affairs and the Chief of Police Manuel Morales (Hispanic/Non-Black) that we were not being treated the same because the white officers were preferential treatment based on race.

74.    Plaintiff specifically informed the City of his belief that the City was engaging in the exact type of racial bias that is prohibited by Title VII.

75.    Plaintiff  requested a Compliance Review Panel to identify such deficiencies and violations, but instead of listening to our complaints and affording us the opportunity to exercise our Due Process Rights and grant us a Compliance Hearing, cancelled our principal statements further discriminating against us.

76.    Yet in this same investigation allowed Major Antonio Diaz (Hispanic/Non-Black) to provide a statement.

77.    On May 26, 2022, Plaintiff complained of this disparate and racial/national origin discrimination that violates Title VII to the City Mayor and other agencies to include FDLE.

78.    After his complaint, he was retaliated against by Chief Morales as he advised Internal Affairs to notify the Plaintiff that we would receive discipline for Case #C21-286, although Chief Morales knew that we still did not provide a statement like Major Antonio Diaz (Hispanic/Non-Black) and Ronald Papier (Non-Black) did.

79.    The white officers were ultimately not disciplined after being given full due process, while the black officer Lanier was targeted and received adverse action;

80.    On July 6, 2022, Wanda Jean-Baptiste and Lanier were issued reprimands recommending

'Demotion' and 'Suspension of hours and transfer out of Internal Affairs;

81. Plaintiff was again not allowed to provide a statement whereas his white counterparts were allowed this Due Process.

82. Also, in regard to both investigations Plaintiff and Sergeant Perez held the same roles.

83. Both investigations concluded with the investigators violating the same policies and procedures, yet they received different recommendations of discipline and imposition of discipline based on race.

84. Attached as Exhibit "F" is an email from Plaintiff explicitly informing the City of the illegal discrimination herein the City provided more favorable treatment and pleas based on race, for which he received retaliation in the form of adverse action.

85. Plaintiff filed a timely complaint with the EEOC and filed a timely lawsuit after receiving a Right to Sue Letter.

### COUNT I
### VIOLATION OF SECTION 112.3187 FLORIDA STATUTES
### (Against Defendant CITY OF MIAMI)

86. Plaintiff hereby incorporates paragraphs 1 through 66 as if fully set forth herein.

87. The **CITY** is an agency, a term defined by Section 12.3187(3)(a) Florida Statutes.

88. **LANIER** was at all times material an employee as that term is defined by Section 112.3187(3)(b) Florida Statutes.

89. The CITY took adverse personnel action against **LANIER** as that term is defined by Section 112.3187(3)(c) Florida Statutes and did so in direct retaliation for his protective activities.

90. The action taken against **LANIER** included demotion, loss of titles, positions, reduced compensation, and benefits within the **CITY.**

91. The actions taken by the **CITY** were prohibited under Section 112.3187(4) Florida Statutes.

92.     The prohibitive actions were taken because **LANIER** disclosed information, as defined by Sections 112.3187(5)(a) and (b) Florida Statutes.

93.     Plaintiff **LANIER** disclosed acts and suspected acts of gross management, malfeasance, misfeasance, and gross waste of public funds committed by employees and agents of the **CITY.**

94.     **LANIER** participated in investigations and other inquiries conducted by agencies of the local, state, and federal government as defined in Section 112.3187(7) Florida Statutes.

95.     **LANIER** filed written and signed complaints disclosing information enumerated in Section 112.3187(5) Florida Statutes to parties and entities enumerated in Section 112.3187(6) Florida Statutes.

96.     Plaintiff refused to participate in adverse actions prohibited by Section 112.3187 Florida Statutes.

97.     Plaintiff refused to participate in unethical, illegal, and inappropriate violations of Federal, State, and local laws, rules, regulations, and policies, and disclosed to **CITY** officials and officers such violations and misrepresentations to **CITY** and state officials.

**WHEREFORE**, for these reasons, Plaintiff BRANDON LANIER requests immediate reinstatement to his position, with full pay, including back pay and front pay, benefits, compensation, seniority rights, and any lost income, as well as compensatory damages, and all other relief deemed appropriate. Plaintiff LANIER also seeks immediate payment of his attorneys' fees and costs.

<u>**COUNT II**</u>
<u>**DISCRIMINATION BASED ON RACE**</u>
<u>**IN VIOLATION OF TITLE VII**</u>

98.     Plaintiff re-alleges paragraphs 1 through 14 and 67 to 85  as if fully set forth herein.

99.     Plaintiff is an African American.

100.    He was discriminated against and received adverse action including demoted because of his race.

101.    As a direct and proximate result, Plaintiff has suffered permanent damages.

**WHEREFORE**, Plaintiff demands judgment for damages against the City, including but not limited to compensatory damages, back pay and benefits, future pay and benefits, liquidated damages, punitive damages, prejudgment interest, and attorney's fees and costs, and other available relief as the Court deems just and proper.

<u>**COUNT III**</u>
<u>**RETALIATION**</u>
<u>**IN VIOLATION OF TITLE VII**</u>

102.    Plaintiff re-alleges paragraphs 1 through 14 and 67 to 85  as if fully set forth herein.

103.    Plaintiff is an African American.

104.    He was discriminated against and demoted because of his race.

105.    Title VII prohibits retaliation against an employee because they opposed prohibited practices and/or participate in investigations of prohibited practices.

106.    Plaintiff was subjected to retaliation for opposing unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

107.    As a direct and proximate result, Plaintiff has suffered permanent damages.

**WHEREFORE**, Plaintiff demands judgment for damages against the City, including but not limited to compensatory damages, back pay and benefits, future pay and benefits, liquidated damages, punitive damages, prejudgment interest, and attorney's fees and costs, and other available relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury for all issues so triable as a matter of law.

**DATED: July 5, 2023.**

Respectfully submitted,

**MICHAEL A. PIZZI, JR., ESQ.**
*Attorney for* **BRANDON LANIER**
Florida Bar No 079545
6625 Miami Lakes Drive, Suite 316
Miami Lakes, Florida 33014
Phone: (786) 594-3948
Fax:     (305) 777-3802
E-mail: mpizzi@pizzilaw.com

By: S/ *Michael A. Pizzi, Jr.*
**MICHAEL A. PIZZI, JR., ESQ.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing document was e-filed through the State's E-Filing Portal and copies furnished electronically to all parties on record on this 5th day of July 2023.

By: S/ *Michael A. Pizzi, Jr.*
**MICHAEL A. PIZZI, JR., ESQ.**

# EXHIBIT A

**<u>SETTLEMENT AGREEMENT AND GENERAL RELEASE WITH JAVIER ORTIZ</u>**

This Settlement Agreement and General Release (hereinafter "Settlement Agreement" or "Agreement") is made and entered into this 2nd day of May, 2023, by and between JAVIER ORTIZ (hereinafter "ORTIZ"), his agents, heirs, executors, administrators, successors and assigns and anyone who may claim by and though him, and the CITY OF MIAMI (hereinafter "CITY"), a municipal corporation within the State of Florida.  Collectively, the Parties be referred to as "the Parties."  The Parties agree as follows:

WHEREAS, the Plaintiff has numerous pending grievances and lawsuits against the CITY (hereinafter referred to as "Pending Litigations").[1]

WHEREAS, for the purposes of avoiding costly litigation and in order to reach an amicable resolution of every matter referenced in foot note 1, the Parties desire to reach a final settlement on all causes of action;

NOW THEREFORE, in consideration of the covenants, representations and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties ORTIZ agrees to be legally bound by the following terms and conditions which ORTIZ constitute full settlement of any and all claims, attorneys' fees, and any and all costs which arise out of any allegation raised by ORTIZ in the Pending Litigations:

1. CONSIDERATION.   In consideration for execution of this Settlement Agreement, and compliance with the promises made herein, the CITY agrees to the following:
   a. The CITY agrees to reinstate ORTIZ to the position of Captain of Police.
   b. The CITY agrees to take all actions necessary to reinstate ORTIZ from the date of his original termination to the date he is returned administratively reassigned on May 2, 2023, as if there was no break in service. In relation to his restoration, the CITY further agrees as follows:
      i. The CITY agrees to pay ORTIZ all backpay, including all pay incentives to which he would have been entitled, at his Captain rate of pay from the time he was originally terminated to May 2, 2023.
   c. The CITY agrees ORTIZ will be administratively reassigned to the Office of the Chief on the C-shift. ORTIZ's point of contact will be the Chief of Police. ORTIZ will be available by phone for consultation on labor matters to the Chief of Police for the life of this agreement.
   d. The CITY agrees to grant ORTIZ the ability to work outside employment unless such employment is for another police agency or would be in contradiction to the current

---

[1] Grievance No. 22-05, Grievance No. 22-270, EEOC Charge No. 510-2021-03103. Including Internal Affairs Case Number C21-162, which shall be closed upon ORTIZ's reinstatement as unsustained.

        departmental order(s), City's administrative policies, the FOP collective bargaining agreement, or any Miami-Dade ordinance on outside employment.

    e.  The CITY agrees to restore ORTIZ's vacation and sick balance that ORTIZ would have accrued from the date of his termination to his return date.

    f.  The CITY agrees to restore ORTIZ's seniority as though there was no break in service.

    g.  Upon reinstatement, the CITY agrees to provide ORTIZ with 70 hours of compensatory time in lieu of holiday pay.

    h.  The CITY agrees to rescind ORTIZ's reprimand terminating his employment. The CITY will replace it with a new reprimand that sustains ORTIZ for one charge of improper procedure for the July 31, 2021, incident only.

    i.  The CITY agrees that it will be bound by the nondisparaging agreement and public statement specifically stated in Paragraph 12 when discussing this Settlement Agreement, any terms of this Settlement Agreement or ORTIZ in general.

In return for the foregoing, ORTIZ agrees to the following:

2.  In exchange, ORTIZ agrees to the following:

    a.  ORTIZ will enter the D.R.O.P. program on November 7, 2023.

    b.  ORTIZ agrees that the last day of his employment with the CITY will be on November 7, 2025.

    c.  ORTIZ agrees that, while he is administratively reassigned, he waives the issuance of all police equipment including a take home vehicle.

    d.  ORTIZ agrees that, while he is administratively reassigned, he will be reissued his police identification and badge. He will only utilize his police power in the event someone is using or threatening to use deadly force and if he reasonably believes that he must act to prevent imminent death or great bodily harm to himself or another or to prevent the imminent commission of a forcible felony.

    e.  ORTIZ agrees that, while he is administratively reassigned, he will not work any extra-duty assignments.

    f.  ORTIZ agrees that, while he is administratively reassigned, he will not be permitted to work any overtime, unless subpoenaed for any functions related to his employment outside of his work hours.

    g.  ORTIZ agrees that he will not conduct union business on behalf of the Fraternal Order of Police or run for union office during the life of this Settlement Agreement.

    h.  ORTIZ agrees to voluntarily withdraw all pending grievances and dismiss all pending lawsuits against the CITY, identified in footnote 1.

    i.  ORTIZ agrees that he will be bound by the nondisparaging agreement and public statement specifically stated in Paragraph 12 when discussing this Settlement Agreement, any terms of this Settlement Agreement or the CITY in general.

3.     MUTUAL GENERAL RELEASE OF CLAIMS.  ORTIZ, his agents, heirs, executors, administrators, successors, assigns, agents, representatives and anyone who could claim by and

through ORTIZ do hereby forever unconditionally and irrevocably mutually release, settle, acquit, remise, satisfy and discharge the CITY, any of its elected officials, agents, officers, or employees from all claims, liabilities, demands and causes known or unknown, fixed or contingent, which he may have, or claim to have, against the CITY and any of its agents, officers, elected officials or employees of any and all claims, demands, actions, causes of action, damages, expenses, or costs whatsoever, whether known or unknown, which ORTIZ had, has, or may have including, but not limited to any of the following:

   a.  Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2, et seq.;
   b.  Age Discrimination in Employment Act, 29 U.S.C. §621, et seq.;
   c.  Sections 1981 and 1982 of Title 42 of the United States Code;
   d.  Employment Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq.;
   e.  Americans with Disabilities Act of 1990, 42 U.S.C. §12111, et seq.;
   f.  Fair Labor Standards Act of 1938, 29 U.S.C. §201, et seq., and related wage and hour provisions under Florida law;
   g.  Family Medical Leave Act of 1993, 28 U.S.C. §2601, et seq.;
   h.  Florida Private Whistleblower Act, §448.101, et seq., and related whistleblower provisions under federal law;
   i.  Torts of all kinds, including but not limited to misrepresentation, negligence or otherwise, fraud, defamation, libel, slander, interference with an advantageous business relationship, battery, negligence, intentional infliction of emotional distress, negligent security, invasion of privacy, negligent hiring, negligent retention;
   j.  Breach of contract;
   k.  Any public policy, contract, debt, or action based on common law; and
   l.  Any and all civil claims seeking legal relief, equitable relief, pain, mental and physical suffering, past, present and future damages, and permanent disability, loss of earnings, earnings capacity, medical (and mental health) bills, expenses, hospitalization expenses, past, present and future attorney fees, or liens, any and all other insurers' claims, subrogated interests, either by contract, statute, and/or by common law, loss of service and/or companionship and loss of substituted services, including, but not limited to, all compensatory and punitive damages.

ORTIZ acknowledges and agrees that the releases set forth herein are general releases which expressly waive and assume the risk of any and all civil claims for damages which exist as of the date of the execution of this agreement, but of which the Parties do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect either or both Parties' decision to enter into this Settlement Agreement.

4.     ACKNOWLEDGMENTS.  The Parties acknowledge that they have read and understood this Settlement Agreement and specifically acknowledge that they have been advised to consult with an attorney and have had sufficient opportunity to do so prior to executing this Agreement.

5.     AFFIRMATIONS.  ORTIZ affirms that he has been paid and/or has received all past compensation, wages, bonuses, commissions and/or benefits to which ORTIZ is entitled to and

that no other past compensation, wages, bonuses, commissions and/or benefits are due to him, except as provided in this Settlement Agreement. ORTIZ affirms that he has not filed, caused to be filed, or is presently a party to any claim, complaint, appeal, action, legal suit or administrative proceedings with any agency, either individually or jointly, including but not limited to the U.S. Equal Employment Opportunity Commission, U.S. Department of Labor, Florida Commission on Human Relations, Florida Department of Labor and Employment Security, or any other federal, state, or local agency, other than the current law suit styled as the Pending Litigations.

6.    GOVERNING LAW AND INTERPRETATION.  This Settlement Agreement shall be governed by the laws of the State of Florida without regard to its conflict of laws provision.

7.    NO ADMISSION OF WRONGDOING.  The Parties agree that neither this Settlement Agreement nor the furnishing of the consideration for same shall be deemed or construed at any time for any purpose as an admission by the CITY of any liability or unlawful conduct of any kind.

8.    BREACH OF AGREEMENT. The General Release provision set forth above ORTIZ is not construed to cover any breaches or violations of the terms and provisions of this Settlement Agreement.  The Parties agree that all disputes, controversies, or claims arising out of or relating to this Settlement Agreement, or the breach thereof, shall be resolved and determined by a court of competent jurisdiction in Miami-Dade County, Florida. Each party shall bear their own attorney's fees and costs associated with participation in arbitration pursuant to this paragraph as well as any subsequent legal proceedings to enforce an arbitration award.

9.    ELECTRONIC COUNTERPARTS. This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, and such counterparts shall together constitute but one and the same Agreement. The parties shall be entitled to sign and transmit an electronic signature of this Agreement (whether by facsimile, PDF or other email transmission), which signature shall be binding on the party whose name is contained therein. Any party providing an electronic signature agrees to promptly execute and deliver to the other parties an original signed Agreement upon request.

10.    AMENDMENT. This Settlement Agreement may not be modified, altered, or changed except upon express written consent of both Parties wherein specific reference is made to this Agreement.  Any modification of this Settlement Agreement must be by written instrument signed by all Parties.

11.    SEVERABILITY.  Each provision of this Settlement Agreement is intended to be fully severable. Should any provision of this Separation Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release provision set forth above, such provisions shall immediately become null and void, leaving the remainder of this Separation Agreement in full force and affect.  However, should a court of competent jurisdiction declare the general release provision unenforceable for any reason, the case shall remain settled, and Parties shall redraft the provision to make it enforceable.

12. NONDISPARAGING/PUBLIC STATEMENT. The Parties agree that neither Party shall make any disparaging statements about either the CITY or ORTIZ. When asked about this Settlement Agreement, the terms of the Settlement Agreement, or about the CITY or ORTIZ, both Parties shall respond with the following:

> BOTH PARTIES:  The South Florida Police Benevolent Association on behalf of Captain Javier Ortiz and the City of Miami have reached a resolution to all pending matters regarding the employment of Captain Ortiz.  Both parties believe that is in the best interests of the citizens of the City of Miami and Captain Ortiz.

13. ENTIRE AGREEMENT. This Settlement Agreement constitutes the entire agreement between the Parties, and fully supersedes any and all prior agreements or understandings between the Parties.

14. ORTIZ states that he has carefully read this document and that he fully understands its contents, that he is of legal age, that ORTIZ has signed this document on his own free act and has not been influenced in making entering into this Settlement Agreement by any representation of the party or parties being released.

IN WITNESS WHEREOF, the Parties hereto have caused this instrument to be executed as of the Effective Date above.

**For the City:**

_____
Arthur Noriega, V.
City Manager

_____
Victoria Méndez, Esq.
City Attorney

**For Ortiz:**

_____
Griska Mena, Esq.

_____
Javier Ortiz

**STATE OF FLORIDA**          )

**COUNTY OF MIAMI-DADE)**        **SS:**

     ON THIS _2_ day of _May_, 2023, before me personally appeared JAVIER ORTIZ, known to me to be the person who executed the foregoing Settlement Release and acknowledge that he/she executed as his/her free act and deed.

OFELIA E. PEREZ
MY COMMISSION # GG 360880
EXPIRES: August 2, 2023
Bonded Thru Notary Public Underwriters

SIGNATURE _____

PRINT _Ofelia Perez_____

Page **6** of 6

# EXHIBIT B



# City of Miami Police Department
# REPRIMAND

**Employee:** _____Manuel A. Morales_____  **P.I.N.** ____4886____

**Classification:** ___Assistant Chief of Police___  **Assignment:** ___COP/ FOD Chief___

## NARRATIVE:
*(If more space is needed, use additional pages)*

On April 7, 2021, the Miami Police Internal Affairs Section received a formal complaint via email against Commander Nerly Papier #1473 alleging **Improper Procedure** and **Misconduct**. As a result of the Investigation attached hereto and incorporated herein, an additional allegation of **Improper Procedure** and against Assistant Chief of Police Manuel Morales was discovered and **Sustained**.

Upon completion of this investigation, the following facts were revealed:

On April 2, 2021, at approximately 0905 hours, Commander Papier was involved in a vehicular accident while utilizing her City of Miami assigned police vehicle #220459.

On Wednesday April 14, 2021, I obtained a sworn witness statement from Assistant Chief of Police Morales who stated the following:

Page 1 of __3__

| **Distribution:** | | SIGN | P.I.N. | DATE |
|---|---|---|---|---|
| Disciplinary Detail | **Authored by:** | *signature* | 27526 | 5-19-21 |
| Employee | **Sergeant / Supervisor:** | | | |
| Police Personnel File | **Lieutenant:** | *signature* | #28889 | 5-19-21 |
| Internal Affairs | **Captain:** | | | |
| Employee Relations (Original) | **Commander:** | | | |
| Civil Service (if applicable) | **Major:** | *signature* | 1441 | 5/19/2021 |
| | **Assistant Chief:** | | | |
| | **Deputy Chief of Police:** | | | |
| | **Chief of Police:** | *signature* | 15579 | 6/2/2021 |

Employee **MUST** initial his/her choice for each statement below.

1) I AGREE _*initials*_ or   I DISAGREE _____ WITH THE FACTS AS STATED.
2) I AGREE _*initials*_ or   I DISAGREE _____ WITH THE RECOMMENDED PENALTY.

***DDRB HEARING REQUEST (SWORN ONLY)-*** *To request a Departmental Disciplinary Review Board (DDRB) hearing, you must submit a written request to the Labor Relations Unit Commander within 10 working days from the date this document is received and signed.  Failure to do so will constitute a waiver of this entitlement.*

**Employee Signature:** _*signature*_  **P.I.N.:** _4886_  **DATE:** _5/19/21_

**REPRIMAND (*Continuation*)**  Page 2 of    3

**Employee:**          Manuel A. Morales                    **P.I.N.**      4886

Assistant Chief Morales stated on April 2, 2021 at some time during the afternoon (after staff meeting concluded at approximately 1300 hours) Commander Papier was in his office as she is his subordinate and acting Major for the South District. Commander Papier was in his office discussing a matter not related to her accident when Sergeant Darren Brown #27063 walked into his office requesting a signature from Commander Papier. Chief Morales inquired to Commander Papier "Is everything okay?" at which point she stated, "Yea yea I was involved in a minor 17 (accident)". Assistant Chief Morales stated that was the extent of his involvement.

Prior Sergeant Brown presenting paperwork to Commander Papier for signature, Assistant Chief Morales was not made aware of the crash. Commander Papier failed to inform her direct supervisor is in violation of Departmental Orders.

- Assistant Chief Morales stated he failed to inquire further details for of the crash assuming everything was up to par being that she is a Commanding Officer and has worked with him for a long period of time. **Assistant Chief Morales violated Departmental Order Policy 11.4.6.2 Responsible for Enforcement of Rules and Regulations and 11.6.1.2 Members and Civilian Employees to Know Rules and Regulations.**

Therefore, Assistant Chief Morales has been found to be in violation of the following Miami Police Departmental Orders:

Departmental Order 1, Chapter 11, Rules and Regulations:

**11.4.6 Superior Officers are accountable for all activities of employees under their immediate control. (CALEA 11.3.2)**

**11.4.6.2 Responsible for Enforcement of Rules and Regulations:** Superior officers shall be responsible for the enforcement of the Rules and Regulations, for compliance with department policies and procedures, and for the maintenance of strict discipline. They shall give close attention to this duty to render it unnecessary for a complaint to be lodged before action is taken, whenever possible. They will take suitable action on the discovery of any failure, error, violation, misconduct, or neglect of duty by a subordinate; and they shall act as promptly as circumstances will allow.

**11.6.1.2 Members and Civilian Employees to Know Rules and Regulations:** It shall be the duty of all members and civilian employees of the Police Department to thoroughly familiarize themselves with such provisions of the Rules and Regulations that deal specifically and generally with the duties of their rank, grade, or position. This should occur within **ten days** from the date of issuance. Within thirty days of issuance, every member and every civilian employee shall familiarize himself or herself with all the provisions of the Rules and Regulations. Failure on the part of any member or civilian employee to acquaint himself/herself with the provisions of the Rules and Regulations, as hereby directed, shall be considered negligence of duty and subject to disciplinary action.

Additionally, Assistant Chief Morales is also found in violation of the following **City of Miami Civil Service Rules and Regulations:**

**Rule 14, Sec. 14.2. Grounds for Dismissal, Suspension and Demotion.** The following are declared are

Page 3 of __3__

**Employee:** _____ Manuel A. Morales _____     **P.I.N.** _____ 4886 _____

to constitute a breach of duty and to be grounds for dismissal or suspension from the classified service or grounds for demotion, though charges may be based upon causes other than those enumerated; viz, that any employee who has been guilty of conduct unbecoming any employee of the City of Miami, who:

(d) Has willfully violated any of the provisions of the Civil Service law or rules of the Board.

(e) Has violated any lawful and reasonable official regulation or order, or failed to obey any lawful or reasonable direction made and given by his/her superior, where such violation or failure to obey amounts to:

(2) a serious breach of proper discipline; or

(k) Is incompetent, negligent, or inefficient in the performance of the duties of the position held.

**For the actions of Assistant Chief Morales, as described above, and for violations of the Miami Police Departmental Orders and City of Miami Civil Service Rules and Regulations, I recommend this written reprimand become a permanent part of personnel file.**

# EXHIBIT C

## Synopsis of Meeting

Lanier, Brandon (Commander) <28889@miami-police.org>
Wed 10/13/2021 3:22 PM

To: Morales, Manuel (Assistant Chief) <4886@miami-police.org>;Aguilar Jr., Armando (Assistant Chief) <0056@miami-police.org>;Gause, Cherise (Assistant Chief) <2302@miami-police.org>;Carroll, Thomas (Assistant Chief) <0856@miami-police.org>;Verdin, Michelle <27984@miami-police.org>

Chief, below is a recap of items I discussed at the Chief's meeting:

- CIP Complaint of the improper uploading of 103 Closed Internal Affairs Cases. Case has been opened by Internal Affairs and is currently being investigated.
- CIP request to review case investigated by CIP but not investigated by Internal Affairs involving Major Eric Gonzalez, Cmdr. Manuel Abreu, Ofc. Keidy Lainez. Case is opened and being assigned to investigate.
- Internal Affairs case involving Major UmSet Ramos. Case sat unassigned and not investigated for months. Case has been assigned and is currently being investigated.
- Email received from Sergeant Perez. (Redline has been requested and is in process of being completed)
- Audit of 180 days of closed cases I discovered that were not properly investigated. Twenty-two have been reassigned and updated. Six more cases remain pending.
- Approval of Sergeant Ryan Rodriguez to be transferred to Internal Affairs.
- Video of Excessive Use of Force involving Ofc. Muina. Officer applied pressure to the head and neck of a defendant who was cuffed and taken to the ground. Complainant filed complaint on case 3 years after the incident occurred. Case is currently being investigated and will be sent to the state for review.
- Video of Officer Tyrone Watson yelling obscenities at the complainant. Reprimand is being reviewed by myself and Lt. Castell for recommendation of discipline.
- Video of Rodolfo Diaz getting into an argument with a resident of an apartment complex where the officer threatens to come back and shoot the resident with an unregistered gun. Case was reviewed by the state who advised to proceed administratively. Case is currently being investigated. Officer is an FTO.
- Jose Reyes case where the Sergeant was discourteous to the female as he was yelling at her. Call was an occupied burglary. Case is currently being investigated and the investigator is preparing for interviews.

I have attached a letter I sent to Chief Acevedo of things that have been done in Internal Affairs to improve the issues that were in existence when I took over. Please review. If you have any questions, please let me know.

Thank you.

Respectfully,

*Commander Brandon Lanier*

Commander of Internal Affairs
Office: (305)835-2027
Cell: (305)305-4808
Masters of Science/Criminal Justice Management – University of Maryland

*"When you get to the point to where you want to be successful as bad as you want to breathe, then you'll be successful" – Eric Thomas*

Good morning Chief and Deputy. This email is to give you a progress of Internal Affairs in the first 30 days of my appointment as Commander.

The following has been identified and accomplished:

Conducted a section meeting at which time I introduced myself, went over my expectations, my work ethic, expectations of what an acceptable work ethic in the section will be, and discussed my vision for Internal Affairs and the department as a whole. Expressed that I wanted two narratives in the department about Internal Affairs:

- Internal Affairs will investigate every case in its entirety and "Issue discipline" with a zero-tolerance approach. I want people to know that policies and procedures must be adhered to.

- Internal Affairs will investigate every case in its entirety and "Exonerate" with a zero-tolerance approach. I want officers to know that Internal Affairs will support them when they have followed the policies and procedures.

Conducted an audit of all case files for last 21 years

Returned numerous cases for corrections (There are multiple cases missing and we are researching them to locate the files)

Conducted an audit of closed cases in the last 180 days and returned the following 22 cases for corrections:
- C21-127: "Information Only" needs to be changed to a "Non-Complaint"
- C21-021: "Information Only" needs to be thoroughly investigated
- C21-005: "Information Only" needs to be changed to an "Not Sustained"
- C21-119: File needs to upload PowerPoint into IA Pro
- C21-139 "Information Only" needs to be changed to an "Exoneration"
- C21-017: "Information Only" needs to be changed to a "Non-Complaint"
- ADM21-006: 301 needs to be in Summary format
- C21-075: "Information Only" needs to be changed to a "Withdrawal"
- T21-004: "Information Only" is OK. File is missing documents
- T20-084: "Information Only" is OK. 301 needs to be updated
- T21-008: "Information Only" needs to be changed to a "Non-Complaint"
- T21-006: "Information Only" need to change case number & add weblink
- C20-083: "Information Only" needs to be changed to an "Exoneration"

- C20-134: "Information Only" needs to be changed to an "Exoneration"
- C20-209: "Information Only" needs to be changed to an "Exoneration"
- C21-132: "Information Only" needs to be changed to an "Exoneration"
- C20-109: "301" needs to be changed to a "Summary"
- T21-021: "Information Only" needs to be changed to an "Exoneration"
- C21-017: "Information Only" needs to be changed to a "Non-Complaint"
- C21-146: "Information Only" needs to be changed to a "Withdrawal"
- C20-206: "Information Only" needs to be changed to a "Non-Complaint"
- C20-124: "180 Expired on 1/16/21" File completed within 180 days but the time expired during the signing of the redline because the Major signed it on 1/14/21 and the Deputy signed it on 2/11/21.

**I still have approximately 6 files that need corrections that I need to review and make determination before giving back to the detectives**

- C21-054: "Information Only" needs to be changed to a "Exoneration"
- C20-160: "Information Only" needs to be changed to a "Exoneration"
- C20-165: "Information Only" needs to be thoroughly investigated
- C20-142: "Information Only" needs to be thoroughly investigated
- C21-037: "Information Only" needs to be thoroughly investigated
- C20-201: "Information Only" needs to include additional information

Restructured in-house reporting of detectives to sergeants

Changed language on Record of Formal Counseling & Reprimands

Reviewed and updated the entire SOP's

Attended several DDRB Hearings

Attended CIP Meetings

Attended several meetings with the Chief, Deputy Chief, and Legal

Goals for the next 30 days:
- Fill the vacancies in Internal Affairs
- Improve the intake process
- Utilize the Mediation Program
- Get approved to increase staffing

- Improve case files and uploading of files to IA Pro
- Improve relationship with CIP, ensuring they receive files

# EXHIBIT D

anoriega@miamigov.com      Art Noriega, City Manager
VMendez@miamigov.com      Victoria Mendez, City Attorney
tguba@miamigov.com         Theordore Guba, City Auditor General
KatherineFernandezRundle@miamisao.com  Katherine Fernandez Rundle, M-D State Attorney
krjones@miamigov.com        Kevin Jones, Deputy City Attorney
sao17@sao17.state.fl.us      Howard Pryor, Broward State Attorney
markglass@fdle.state.fl.us     Mark Glass, Acting FDLE Commissioner
governorron.desantis@eog.myflorida.com Governor Ron DeSantis, State of Florida
juan.antonio.gonzalez@usdoj.gov Juan Gonzalez, USAO, Southern District

Re: Report of Ongoing Corruption Involving Miami Police Chief, Manuel Morales

Dear Mr. Noriega and Law Enforcement Leadership,

The purpose of this statement is to report illegal, unethical, and corrupt activities that are taking place at the Miami Police Department Internal Affairs Section involving the Chief of Police, Manuel Morales as well as the unfair, unethical, unjust treatment of myself and Wanda Jean-Baptiste in an ongoing investigation.

When Chief Morales became the interim Chief of Police, he overturned many decisions former Chief Art Acevedo made regarding decisions on Internal Affairs investigations and Staff Level positions. Furthermore, Morales has used his position to open investigations to target employees and influence the outcome of investigations. During several commission meetings Commissioner Joe Carollo made allegations against former Chief Acevedo. The commissioner was displeased by the termination of two staff members (Ronald and Nerly Papier) as well as the ongoing investigation of a Sergeant-at-Arms Luis Camacho. At this time, I was the Commander of the Internal Affairs Section and tasked to oversee all the investigations. Commissioner Joe Carollo made statements alleging that Mr. Acevedo had been involved in an unreported crash in his police vehicle and made statements indirectly alleging that Captain Ortiz had covered up the crash for Mr. Acevedo.  This was highlighted during a commission that ultimately led up to the former Chief being fired.

Commissioner Carollo was vocal with his opinion that the staff members should not have been fired. The investigation which presented facts that my unit reported to the Chief of police, led to the termination of both those staff members. Chief Acevedo specifically assigned me to oversee the investigation along with Detective Wanda Jean Baptiste as the lead detective and report directly to him for all final decisions that will be made on the case. As the investigator of any case, it is important to ensure an officer's due process rights as well as the rights provided by the police officer bill of rights are not violated. I take all of my assignments very serious, however in this instance it was critical because two staff members were involved in this investigation. During this investigation, I regularly consulted with the Chief of Police and the City Attorney on all findings presented to me to ensure everything was legally sufficient and compliant with all ethical obligations.

At the time of this investigation, Chief Morales was in charge of the Field Operations Division that Nerly Papier was assigned to. In his statement to Internal Affairs, Chief Morales advised that Nerly Papier had not reported being involved in a vehicle crash until he saw her signing paperwork written by a Sergeant Brown. Video surveillance and witness statements corroborated that she had violated departmental policies and Florida State traffic statutes.

Whether you dislike or like Mr. Acevedo is irrelevant, in my position as a member of the Miami Police Department and especially in the position of Commander of Internal Affairs. My decisions and actions have and will always be consistent so that there is no question as to my integrity. I achieve this by being as transparent and fair in all investigations, while collecting all of the information as required of my position.

Immediately after Mr. Acevedo was terminated, I was directed by then Interim Chief Morales to open multiple investigations on Captain Javier Ortiz. Let me start off by stating that I have no personal relationship with Captain Ortiz. As with any other case that is presented for an investigation, I don't inject any personal feelings. My opinion of him doesn't matter. My responsibility is to abide by the law, investigate with utmost integrity, and to present the facts, not make decisions on the discipline.

Chief Morales directed me to retrieve body worn camera video of an incident involving Coral Gables Police in which Captain Javier Ortiz was on scene as the Commander of Traffic Homicide. He also directed me to pull Captain Ortiz's Internal Affairs profile for his review. It was well known that Chief Acevedo had reviewed several complaints made against Captain Ortiz and found that they had no merit, and the department could not move forward with discipline. After a lengthy investigation, Captain Ortiz was made Traffic Commander of the Specialized Operations Section.

On October 21, 2021, I was notified by Chief Morales that Commander Ernie Sierra would be coming to Internal Affairs to give a secondary statement regarding something he forgot to state on an investigation involving Major Keandra Simmons. In his statement, Commander Sierra stated, "he forgot to say that Captain Ortiz made derogatory statements about Major Simmons". It was predetermined by Chief Morales that once the statement was taken, I was to immediately relieve Captain Ortiz of duty. As instructed by Chief Morales, I relieved Captain Ortiz of duty reference a multitude of cases (cases that Chief Morales himself ordered Internal Affairs to investigate). A few of those cases are as follows:

On October 27, 2021, I was directed by Chief Morales to open an investigation on Captain Javier Ortiz for allegations of abusing overtime. These allegations stemmed from statements made by Commissioner Carollo at a Commission meeting on September 27, 2021. The allegations were made by solely Commissioner Carollo. After collecting all of the evidence in that case Captain Ortiz was exonerated.

Two additional cases were opened against Ortiz that were received by the City of Miami in January of 2020 from the CIP. When discussing these cases with Chief Morales, I advised him

that it was Internal Affairs who failed to properly open and investigate those cases within the allotted time and that those cases were well over the 180 days required by the 112. In fact, those cases were well over a year and a half old. Chief Morales advised me to investigate the cases. I advised Morales that there could be no discipline imposed on these cases and it would not look good to open cases on anybody that Internal Affairs were clearly negligent on. Yet he advised me to assign the cases.

All of the investigations against Captain Ortiz were opened shortly after Chief Acevedo was terminated and Chief Morales was named the Interim Chief by the Commission. Just seven days after Chief Acevedo was terminated, Captain Ortiz was relieved of duty at the direction of the Interim Chief of Police.

I attended several meetings that were directed by Chief Morales to discuss the status of various cases, to include Captain Ortiz. During one of those meetings, Chief Morales made specific comments to me on how he expected the outcome of cases involving Captain Ortiz to be. In attendance at one of the meetings was Chief Thomas Carroll and Armando Aguilar Jr. Chief Morales stated, "I would not accept anything less than a termination for Captain Ortiz and heads will roll in IA if I don't get that". Subsequently, Ortiz filed a 112 violation, had a hearing where it was determined that his rights were violated, and I was transferred out of Internal Affairs although, I had absolutely no involvement in the case where Ortiz was violated. That initial case against Ortiz was later completed and he was not sustained.

Once Acevedo was terminated, Chief Morales soon after repromoted everyone that Chief Acevedo demoted, and reinstated Ronald and Nerly Papier. Due to my involvement in overseeing the investigation of these two staff members, overseeing the investigation of a well-connected Sergeant-at-Arms, and not adhering to the wishes of terminating Captain Ortiz, I am being retaliated against. I am also being sought to be terminated for my involvement in an investigation that Chief Morales is not allowing me an opportunity to provide a statement. Anyone that had the appearance of being in support of Mr. Acevedo has been made a target.

Regarding the case against myself and Wanda Jean-Baptiste, Internal Affairs was advised on May 9th that several additional witnesses needed to be interviewed. Internal Affairs responded with an email stating that "Internal Affairs has considered your request and determined that it is not necessary to interview any of the named witnesses, as all witnesses who have relevant information have been identified and interviewed". Then after such email, my attorney received a letter from George Wysong stating the following "In the present case, Internal Affairs identified all relevant witnesses needed to determine whether a violation of the Departmental Orders occurred". That is impossible because prior to this letter, at that time, the only "witnesses" interviewed was Ronald Papier. Therefore, the outcome and conclusion of this case has already been predetermined just as I have witnessed this same behavior from Chief Morales in other cases involving Ortiz.

I am being SILENCED for exercising my rights to request a Compliance Hearing although the 112 states that I cannot be retaliated against for exercising such rights. A Compliance Hearing that

was denied by Morales in a letter due to his interpretation of the 112. Yet in that same letter I was advised that although no violation occurred, that "You may consider, the cancellation of Lanier's interrogation to be a remedy of your alleged violation notwithstanding the fact that the MPD disputes that any violation of section 112.532 Florida Statute ever occurred in this matter". So why is there a remedy being imposed on a non-violation? And why am I being SILENCED for a case where I am the principal officer, afforded rights per the 112? Initially I was called in as a principal officer to provide a statement, but after exercising my rights the case can now conclude without me, although I am available, willing and requesting to provide a statement. Furthermore, I do not consider or accept the cancellation of my statement to be a remedy because I NEVER refused to provide a statement. Per the 112, once the Compliance Review is concluded either way, the case continues. So why is the case continuing with me being 'deliberately' SILENCED? SILENCED from proving my innocence. This is the most unethical thing I've ever experienced. I emailed the Internal Affairs Section advising them that I want to provide a voluntary statement only because my right to provide a principal per the 112 has been cancelled because Chief Morales determined that "Internal Affairs no longer requires the interview of Lanier to conclude its investigation". My request via email to Internal Affairs to provide a statement has been ignored. My attorney also followed up with an email requesting for me to provide a statement which was also ignored. Therefore, the outcome and conclusion of this case has already been predetermined just as I have witnessed this same behavior from Chief Morales in other cases involving Ortiz. "

My rights, as well as Wanda Jean-Baptiste have been violated in the same manner that was done to Captain Ortiz, by influence from Chief Morales. I am requesting for there to be an investigation into all the allegations I am reporting involving Chief Manuel Morales. I ask that you have all Internal Affairs Investigators interviewed on how they were directed to handle their findings on all cases, especially on myself, Wanda Jean-Baptiste, and Captain Ortiz. With this memorandum, I am notifying the Miami-Dade and Broward State Attorney's Office, our U.S. Attorney, as well as the Florida Department of Law Enforcement to intervene in investigating this report. I respectfully request for the entities that have resources outside of the South Florida area investigate these allegations due to the turbulent Miami political leadership interfering or attempting to influence investigations. I am in fear that since I am upholding the law as I swore in my oath as a law enforcement officer, I will be disciplined with either a demotion or termination of employment.

Sincerely,

Commander Brandon Lanier

# EXHIBIT E

# Miami Police Department
Employee Evaluation Form

**Employee Information**
**Employee** LANIER, BRANDON
**ID** 28889
**Shift** Day
**Supervisor** GARRIDO, DANIEL
**Department** Miami Police Department
**Assignment** FOD-CENTRAL-OVERTOWN-
**Rank** Net Commander
**Position** MPD Sworn Member

**Evaluation Information**
**Type** Sworn Member Annual Evaluation
**Review Date** 8/25/2022
**Rating Date** 8/1/2021 to 7/31/2022
**Overall Rating** SAT

**Scale: <u>Overall Ratings</u>**
SAT = Satisfactory
UNSAT = Unsatisfactory

| Performance Rating Legend |
| --- |

## Performance Measures

| TypeId | | |
| --- | --- | --- |
| Number | Rating | Performance Statement |
| **Type: Evaluation Factors** | | |
| EF1000 | SAT | Job Knowledge: Commander Lanier is still learning the job of commander. He continues to try to learn and make himself a better leader. |
| EF1001 | SAT | Productivity: |
| EF1002 | SAT | Quality of Results: Commander Lanier immediately follows up on any task or complaint given. |
| EF1003 | SAT | Initiative: |
| EF1004 | SAT | Interpersonal Skills: |
| EF1005 | UNSAT | Discipline: Commander Lanier was sustained in an Internal Affairs Investigation during the rating period. |
| EF1006 | SAT | Judgement: |
| EF1007 | SAT | Organizational Planning: |
| EF1008 | SAT | Achievement of Objectives: |
| EF1009 | SAT | Supervision (if applicable): |

## Previous Requires Improvement

| Number | Performance Statement | Incident Date | Resolution | Expected Date of Accomplishment | Date Accomplished | Entered By |
| --- | --- | --- | --- | --- | --- | --- |
| No records to display. | | | | | | |

## Current Requires Improvement

| Number | Rating | Performance Statement | | Incident Date | Resolution | Expected Date of Accomplishment | Date Accomplished | Entered By |
|--------|--------|----------------------|---|---------------|------------|---------------------------------|-------------------|------------|
| EF1005 | UNSAT | Discipline: | | | | | | 02219 - GARRIDO, DANIEL |
| | | Commander Lanier was sustained in an Internal Affairs Investigation during the rating period. | | | | | | |

## Attachments

| Type | Description | Date | Location | Number |
|------|-------------|------|----------|--------|
| No records to display. | | | | |

## Comments

SUPERVISOR / EMPLOYEE AGREEMENT

This evaluation has been discussed and reviewed with the employee.

MPD Workplace Violence Policy has been provided to the employee.

MPD Sexual Harrassment Policy has been provided to the employee.

The Evaluating Supervisor has offered to provide career couseling to the employee.

_____ #28889          8/30/22
Employee's Name                            Date

_____                 8/25/22
Appraiser's Name                           Date

_____       _____
Department Director/Designee              Date

Employee Comments

Printed On: Tuesday, August 30, 2022
Employee: LANIER, BRANDON          ID: 28889     Eval Period: 8/1/2021 - 7/31/2022          Score: SAT

RECEIVED
AUG 30 2022
Patrol Central

# EXHIBIT F

Re: DDRB Hearing for Commander Brandon Lanier

Lanier, Brandon (Commander) <28889@miami-police.org>
Thu 9/29/2022 5:50 PM

To: Perez, Juan <jperez@miami-police.org>

Cc: Ibalmea, Jesus (Major) <3319@miami-police.org>;Vanegas, Yaosca <27429@miami-police.org>;Panoff, Stephanie K. <SKPanoff@miamigov.com>;Griska Mena <griska@dcpba.org>

Bcc: Lewis Francois, Weslyne <27551@miami-police.org>;Douglas, Jermaine <27553@miami-police.org>;Jean- baptiste, Wanda <27526@miami-police.org>

Regarding the below email from Personnel Resource Management and below response from City Legal denying me my right to selected council (Griska Mena) based on the FOP collective bargaining agreement article 12.1, I am at this time advising the City of Miami Police Department that this is once again discrimination and disparate treatment against me based on my race and ethnicity as well as a violation of my Due Process rights due to the fact that the exact same attorney (Griska Mena) that I am being advised cannot represent me has been allowed to represent 4 White/Hispanic/Non-Black officers who work for the City of Miami Police Department in this exact same type of hearing:

Javier Ortiz
Mario Menagazzo
Ashley Hunter
Intiraymi Figueroa

These officers were allowed the privilege, opportunity, and Due Process right to be represented by attorney Griska Mena (an attorney of their choosing) at their DDRB hearing, yet myself and Wanda Jean-Baptiste who are Black/Non-Hispanic are being advised that we cannot use this exact same attorney in the exact same type of hearing. This is apparent and pronounced discrimination, disparate treatment, and a violation of our Due Process rights.

*Commander Brandon Lanier*
Overtown

---

**From:** Perez, Juan <jperez@miami-police.org>
**Sent:** Wednesday, September 28, 2022 4:17 PM
**To:** Lanier, Brandon (Commander) <28889@miami-police.org>
**Cc:** Ibalmea, Jesus (Major) <3319@miami-police.org>; Vanegas, Yaosca <27429@miami-police.org>; Panoff, Stephanie K. <SKPanoff@miamigov.com>; Griska Mena <Griska@dcpba.org>
**Subject:** Fw: DDRB Hearing for Commander Brandon Lanier

Good Afternoon Commander Lanier,

Based on your email below to inform the Department of the *bargaining unit member* you have selected to represent you, please be advised that Article 12 of the City/FOP Collective Bargaining Agreement, titled "Department Disciplinary Review Board", provides guidance on the process and procedures for conducting a DDRB hearing. Specifically, section 12.1 states that DDRBs "are non-adversary in nature; the bargaining unit member *shall* be entitled to representation by a **bargaining unit member** of his/her choice and shall be permitted to examine witnesses, to present witnesses, evidence, and testimony, to cross-examine, and to put on a defense." (*emphasis added*).  However, a "bargaining unit member"

consists of all sworn employees currently holding the positions in the classification of Officer, Sergeant, Lieutenant, Captain, and Detention Officer and excludes all other employees not holding those position. *See* Article 1, section 1.2.

As such, please advise if the bargaining unit member of your choice for representation at the DDRB meets the qualification required consistent with the terms of the collective bargaining agreement.

Thank you,
JC

**Juan C. Perez,**

**Senior Assistant City Attorney / Police Legal Advisor**



City of Miami
Office of the City Attorney
Telephone: 305-603-6110
jperez@miami-police.org

Assistant: Aida Garcia, Senior Legal Assistant (305)603-6110

<u>Disclaimer</u>:  This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information.  If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges.  Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege.  If the reader of this message is <u>**not**</u> the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521.  If this communication was received in error we apologize for the intrusion.  Please notify us by reply e-mail and delete the original message.  Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

Please consider the environment before printing this e-mail. 

---

**From:** Perez, Juan C. <JCPerez@miamigov.com>
**Sent:** Wednesday, September 28, 2022 3:14 PM
**To:** Perez, Juan <jperez@miami-police.org>
**Subject:** Fwd: DDRB Hearing for Commander Brandon Lanier

## [EXTERNAL EMAIL]

Caution: This is an email from an external source. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Juan C. Perez
Senior Assistant City Attorney / Police Legal Advisor
City of Miami
Office of the City Attorney
Telephone: (305)603-6110
jperez@miami-police.org

Assistant: Aida Garcia,
Senior Legal Assistant

(305)603-6110

Begin forwarded message:


> **From:** "Lanier, Brandon (Commander)" <28889@miami-police.org>
> **Date:** September 28, 2022 at 06:09:18 EDT
> **To:** "Ibalmea, Jesus (Major)- Police" <3319@miami-police.org>
> **Cc:** "Perez, Juan C." <JCPerez@miamigov.com>, "Panoff, Stephanie K."
> <SKPanoff@miamigov.com>, Griska Mena <Griska@dcpba.org>, "Vanegas, Yaosca-
> Police" <27429@miami-police.org>, "Jean- baptiste, Wanda- Police" <27526@miami-
> police.org>
> **Subject: Re: DDRB Hearing for Commander Brandon Lanier**


> | **CAUTION:** This is an email from an external source. Do not click links or open attachments unless |
> | you recognize the sender and know the content is safe. |

The bargaining unit member I chose to represent me for the DDRB Hearing is Griska Mena from the South Florida PBA.

I will provide the 5th member of my choice from the generated list to serve as a panel member before the below mentioned deadline of Tuesday October 4, 2022.


*Commander Brandon Lanier*

Overtown

---

> **From:** Ibalmea, Jesus (Major) <3319@miami-police.org>
> **Sent:** Tuesday, September 27, 2022 8:49 AM
> **To:** Lanier, Brandon (Commander) <28889@miami-police.org>
> **Cc:** Perez, Juan C. <JCPerez@miamigov.com>; Panoff, Stephanie K. <SKPanoff@miamigov.com>;
> Griska Mena <griska@dcpba.org>; Vanegas, Yaosca <27429@miami-police.org>
> **Subject: DDRB Hearing for Commander Brandon Lanier**

Good morning Commander Lanier,

As stated in Article 12.1: Department Disciplinary Review Board of the Fraternal Order of Police - Collective Bargaining Agreement:

The Departmental Disciplinary Review Board does not possess adjudicators or quasi-judicial powers. As such, its hearings are non-adversary in nature; the bargaining unit member appears before the Board voluntarily at his/her request, the bargaining unit member shall be entitled to representation by a bargaining unit member of his/her choice and shall be permitted to examine witnesses, to present witnesses, evidence, and testimony, to cross-examine, and to put on a defense.

Per the above Article 12, you are entitled to a bargaining unit member of your choice to represent you during the DDRB Hearing.

Please provide us with the name of the bargaining unit member you have selected.

Also, you must select a 5th member of your choice from the generated list to serve as a panel member.

Ensure both, the bargaining unit member of your choice and the panel member's names, are provided to our office no later than Tuesday, October 4, 2022.

If you have any questions, you may contact our Legal Unit at 305-603-6110.

Thank you,


Major Jesus Ibalmea
Section Commander
Personnel Resource Management Section