UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 23-cv-22510 SCOLA/GOODMAN

BRANDON LANIER

      Plaintiff,

v.

CITY OF MIAMI

      Defendant.

_____/

**ORDER ON (1) PLAINTIFF'S MOTION TO DISQUALIFY DEFENSE COUNSEL
AND ON (2) DEFENDANT'S MOTION TO STRIKE AND FOR SANCTIONS
ARISING FROM THE ATTEMPT TO RECUSE CITY'S COUNSEL**

In his Amended Complaint (filed in state court and then removed to this Court), Brandon Lanier describes himself as a police officer for the City of Miami, which allegedly retaliated against him because he is a purported whistleblower who came forward with information about corruption and wrongdoing by high-ranking officials in the police department. He asserts claims under Florida Statute § 112.3187 (Count I, the Florida "Whistle-blower's Act") and Title VII (Counts II and III, for unlawful race discrimination and retaliation). Lanier alleges that police officials struck back at him by unlawfully demoting him from Commander to Lieutenant.

More than six months after filing his lawsuit in state court, Lanier filed (on October 27, 2023), a motion to disqualify Senior Assistant City Attorney Stephanie Panoff, who is

Chief of the Labor & Employment division of the City Attorney's Office. [ECF No. 15]. Lanier's motion accuses Panoff of being a "material witness" to his "whistleblower activity." He contends that Panoff advised him to not investigate a criminal complaint against a staff member in order to reduce the City's exposure in a pending civil lawsuit. He also relies on former Miami Police Chief Arturo Acevedo, who signed an affidavit advising that Lanier told him that Panoff told Lanier to not investigate a criminal complaint involving a staff member (in order to reduce the City's exposure on a pending civil lawsuit).

The day after Lanier filed the disqualification motion, the City, through a motion [ECF No. 16] submitted by Panoff, filed a motion to strike the Plaintiff's listing of Panoff, the City's sole counsel of record, as a fact witness. The City's motion alleged that Lanier listed Panoff as a fact witness "solely to recuse [her] for to gain [sic] an unfair litigation advantage." *Id*. The motion asks the Court to strike Lanier's interrogatory answers, where he listed her as a fact witness. The City describes Lanier's attorney as one who "has a pattern of attempting to recuse the undersign [sic] because he knows there is no other attorney at the City who is equipped to defend the City in these types of actions." *Id*. at 5. The motion brands the actions as "an unethical attempt to disqualify City Counsel without basis" and demands sanctions "in the form of a motion to strike." *Id*.

For reasons outlined in greater detail below, the Undersigned **denies** Lanier's Motion to Disqualify Panoff [ECF No. 15] and **denies (without prejudice)** the City's Motion to Strike Panoff as a fact witness [ECF No. 16].

By way of introductory summary, though, the Undersigned **denies** the disqualification motion [ECF No. 15] because (1) disqualification is a drastic remedy which is used only sparingly; (2) disqualification motions are disfavored and are often interposed for tactical purposes; (3) there is a presumption against disqualification; (4) the City unequivocally announced an intent to not call Panoff as a trial witness, so her continued involvement will not run afoul of the rule prohibiting an attorney from acting as an advocate "on behalf of" the City; (5) the Amended Complaint does not mention the alleged "don't investigate" directive from Panoff to Lanier; (6) Lanier's counsel lost a similar motion filed in another Whistleblower lawsuit which a City police officer filed against the City; (7) Lanier raised the disqualification issue for the first time after approximately seven months of litigation; (8) the City explains that Lanier's testimony at trial about the alleged comment would be sufficient (and would not require *her* testimony) because "a jury is free to determine whether Plaintiff is telling the truth;" and (9) Lanier failed to meet his burden.

At the hearing, Lanier's counsel seemed to agree with the notion that the City might be making a strategic blunder (by confirming that Panoff would not be a trial witness for the City) because the cleaner alternative would be to retain outside counsel

(which would enable Panoff to provide trial testimony, if necessary, without confronting the "trial-lawyer-as-witness" prohibition). More on this later.

Finally, the Undersigned **denies** the City's counter-motion to strike [ECF No. 16]. To be sure, the current version of the Complaint and other documents do not mention Panoff's purported status as a witness. The Amended Complaint, the "Charge of Discrimination" (filed with the Equal Employment Opportunity Commission), the email "Whistleblower Letter," and Plaintiff's Initial Rule 26 Disclosures all fail to mention Panoff.

However, Plaintiff has now, in several ways, alleged that Panoff is a fact witness -- including in sworn interrogatory answers. The specifics of Panoff's purported involvement as a fact witness involved in retaliation are not provided, as the allegations are generic and non-specific. But the Court is confronted with a plaintiff who is still a high-ranking officer in the City of Miami Police Department who now represents under oath that Panoff made certain statements (i.e., do not investigate a corruption complaint) which turn her into a fact witness. We also have an affidavit from the former Police Chief, who is now a police chief in Colorado, confirming that Lanier repeated to him the same allegations about Panoff's purported "don't investigate" directive.

I am not now prepared to make critical credibility determinations and permanently proclaim for purposes of this case that Lanier has committed perjury about Panoff's alleged status as a fact witness merely because the City denies (in its opposition

4

memorandum) his primary allegation. We're extremely reluctant to remove a person from an opponent's list of fact witnesses whenever the opponent proclaims that she is not a fact witness or accuses the listing party of designating her as a fact witness solely to obtain an impermissible tactical advantage. Lanier, a current lieutenant with the City's Police Department, has submitted an affidavit and sworn interrogatory answers, explaining why he and his attorney believe Panoff is a fact witness. Panoff and the City disagree, but this factual friction presents "a classic swearing[1] match, which is the stuff of which jury trials are made." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013).

Lanier predicts that the next step (if the disqualification motion were to be denied) is that he would subpoena Panoff for a deposition and that she and the City would seek a protective order to prevent it. That may happen. Or maybe it won't. But we usually do not issue rulings on potential discovery disputes which have not yet ripened into actual controversies requiring a ruling. Ruling now on Lanier's predicted controversy (i.e., what his counsel thinks might unfold next about efforts to take Panoff's deposition) would be premature.

---

[1] Technically, the dispute is not actually a "*swearing* match," as the City and Panoff presented their denial of Lanier's allegations in an unsworn opposition memorandum, while Lanier's position is referenced in an affidavit and interrogatory answers. But the Court did not designate the hearing as an evidentiary one, so Defendants were not *required* to support Panoff's denial with a declaration or affidavit (though they *could* have pursued that alternative).

Courts are not permitted to issue advisory opinions that address "what the law would be upon a hypothetical set of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation omitted). As a result, the controversy "may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985). Discovery rulings are best entered in concrete disputes with established facts. *Roderick Revocable Living Tr. v. XTO Energy, Inc.*, No. 08-1330-JTM, 2009 WL 603641, at *1, n.4 (D. Kan. Mar. 9, 2009) ("Plaintiff references potential discovery disputes related to its use of the term 'affiliates.' . . . . The court declines to express any advisory opinion concerning hypothetical discovery issues that are not properly before the court." (record citation omitted)).

One final introductory point: In an Order [ECF No. 22] deferring a ruling on the City's Motion to Dismiss Lanier's Amended Complaint [ECF No. 7] until I determine whether Panoff should be disqualified, Senior United States District Judge Robert N. Scola Jr. provided a cautionary note: "If the Court finds that the Plaintiff's motion to disqualify was filed in order to delay these proceedings, appropriate sanctions may be awarded."

**Factual and Procedural Background**

Note: The City argues that the disqualification motion is a purely strategic move perpetrated by an attorney (i.e., Michael Pizzi, who is also Town Attorney for the Town of Medley, Florida)[2] with a history of using similar tactics. Given this accusation, the background will include, when necessary, references to other cases in which Lanier's current attorney filed disqualification motions.

*Gomez v. City of Miami*

On October 18, 2021, attorney Michael Pizzi filed a lawsuit on behalf of Edwin Gomez, a City of Miami police officer sergeant, in Miami federal district court, against the City and Javier Ortiz, a City of Miami Police Captain. [No. 21-cv-23688, S.D. Fla.]. The lawsuit, which is still pending on appeal after the district court granted the City's summary judgment motion, alleges that the City unlawfully retaliated against Gomez because of his opposition to unlawful racial discrimination practices. On June 28, 2022, the Court ruled in favor of the City on its motion to compel. Magistrate Judge Chris McAliley found [ECF No. 41] that "most" of Gomez's disputed discovery responses were "plainly improper and inadequate."

Approximately, two weeks later, the City filed [ECF Nos. 45; 46] notices that Plaintiff Gomez failed to comply with the Court's discovery order. Nine days later,

---

[2]       The Undersigned takes judicial notice of the Town of Medley's official website, which lists Pizzi as Town Attorney. *See* Town Attorney Description, https://www.townofmedley.com/town-attorney.(last visited Dec. 8, 2023).

attorney Pizzi filed a motion to disqualify Panoff, alleging that she is "a necessary witness in the case" and that she "perpetrated or assisted in perpetrating the pattern of conduct for which Gomez is suing."

Magistrate Judge McAliley denied [ECF No. 99] the Pizzi-submitted motion to disqualify on several grounds, including the fact that Rule 4-3.7 of the Florida Bar's Rule of Professional Conduct ("Lawyer As Witness") is inapplicable because it concerns scenarios where a client may need to call his *own* lawyer as a witness (but that Pizzi was arguing that his client, the plaintiff, may need to call *opposing* counsel as an adverse witness at trial). Judge McAliley's ruling also criticized the timing of the disqualification motion, noting that Pizzi "offered no explanation" for his nine-month delay in raising the so-called disqualification issue.

<u>*Jean-Baptiste v. City of Miami*</u>

While Pizzi was litigating *Gomez*, he also filed another lawsuit against the City on behalf of another police officer: *Jean-Baptiste v. City of Miami* [No. 23-CV-22670, S.D. Fla.]. In that lawsuit, filed initially in state court on April 18, 2023 but later removed to this federal district court, Pizzi sued the City on behalf of Wanda Jean Baptiste, a detective with the City of Miami Police Department's Internal Affairs Section. In that lawsuit, which is still pending, Jean-Baptiste alleged that the City and its officials relentlessly pursued retaliation and vengeance against her after she initiated and cooperated in an investigation of illegality and misconduct by local officials. Describing herself as a

whistleblower, she alleged that she was instructed to permit improper interference in Internal Affairs Investigations.

On September 18, 2023, the Court granted the City's Motion to Dismiss. On October 9, 2023, Jean-Baptiste filed her second amended complaint, naming Panoff as "a material witness in this case" because she allegedly advised the Police Chief "on his decisions to engage in adverse action against Plaintiff." The second amended complaint also alleged that Panoff advised the Police Chief "and his executive team on the adverse actions that constituted explicit retaliation in violation of Florida Statute 112.3187." [ECF No. 17].

On October 18, 2023, the City filed [ECF No. 19] its motion to strike seven paragraphs of the second amended complaint. The paragraphs at issue concerned Panoff and her alleged involvement in retaliation against the plaintiff. The plaintiff filed a response to the City's motion and the City filed a reply [ECF Nos. 24; 26]. The motion is still pending.

Attorney Pizzi then filed [ECF No. 21] a motion to disqualify Panoff, alleging that she "is a material witness to the whistleblower activity of the [p]laintiff." The motion claims that Panoff "is a witness not only to protected disclosures under Chapter 112.3187, but Panoff is a witness to the very the [stet] retaliation complained of by the [p]laintiff." [ECF No. 21, p. 1]. The City filed an opposition response on November 13, 2023 [ECF No. 30] and [the] [p]laintiff filed a [r]eply on November 20, 2023 [ECF No. 32]. The City's

opposition notes that Pizzi was already "put on notice," through Judge McAliley's opinion in *Gomez,* that his client has no standing to invoke Rule 4-3.7 "unless the City intended to call [Panoff] as a witness." The City further noted that it will not call Panoff as a witness, that Pizzi received no indication to the contrary and that Pizzi's invocation of Rule 4-3.7 "appears to be a (frivolous) effort to gain some kind of perceived leverage." [ECF No. 30, p. 7].

On October 28, 2023, the City filed [ECF No. 22] a motion to strike Jean-Baptiste's naming of Panoff as a witness. Plaintiff did not file a response to this motion, and the time to do so has expired.

On November 13, 2023, the City filed [ECF No. 31] a motion to compel discovery responses. The deadline to respond has passed and the plaintiff did not file a response.

The motions described above in *Jean-Baptiste* are all still pending.

### The Instant Lawsuit (*Lanier*)

In the instant case, Lanier signed the verification of his lawsuit, initially filed by Pizzi in state court, on April 2, 2023. The lawsuit does not contain any allegations against Panoff, and her name is not even mentioned. On July 5, 2023, Pizzi filed an Amended Complaint in state court. Similar to the first one, it does not assert any allegations against Panoff, and it does not even mention her by name. The City removed the case to this federal district court the following day, July 6, 2023. [ECF No. 1].

10

Before filing this lawsuit, Plaintiff also filed a charge of discrimination-- and Panoff is not mentioned.

Similarly, Plaintiff sent a letter alleging whistleblower protection in a pre-lawsuit email letter he sent to City Manager Art Noriega and other City officials, including City Attorney Victoria Mendez and Deputy City Attorney Kevin Jones. This letter, entitled "Report of Ongoing Corruption Involving Miami Police Chief, Manuel Morales," did not mention Panoff.

After filing its Motion to Dismiss [ECF No. 7] on July 17, 2023, the City served its Rule 26 Disclosures on August 17, 2023. [ECF No. 35-1]. Pizzi served his Rule 26 Disclosures on September 11, 2023. [ECF No. 16-4]. Plaintiff's Disclosures do not mention Panoff as a witness.

On October 17, 2023, Plaintiff's counsel served his First Amended Rule 26 Disclosures. [ECF No. 16-5]. The disclosure lists Panoff as a fact witness who is likely to have discoverable information which Plaintiff may use to support his claim. It does not specify *what* information Panoff may have. It simply lists her, along with her title. But Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires the disclosure of the witness, "along with the **subjects** of that information." (emphasis added). For several other witnesses mentioned in the disclosure, Plaintiff explained that he or she "is believed to have knowledge of the allegations in the complaint." No such similar explanation, cursory and detail-free as it may be, accompanied the Panoff disclosure.

On October 18, 2023, after receiving several extensions, Plaintiff responded to the discovery the City propounded on September 6, 2023.

In his answers to the City's interrogatories, which he verified, Lanier blamed Panoff for alleged retaliation. The purported grounds outlined in his interrogatory answer were vague. Specifically, Plaintiff alleged, under oath, the following:

> Interrogatory No. 8: If you contend that you were retaliated against for the items listed in Number 6, please list how you were retaliated against, when, and by whom.
>
> Answer: . . . . 16. Retaliated by **Stephanie Panoff** during whistleblower hearing for exposing her involvement in corruption. (January 24, 31[ ], 2023 and March 7, 2023.)
>
> *****
>
> Interrogatory No. 16: Please list, in detail, how you believe you were discriminated against based on your race. For each instance, please list who discriminated against you, when, and through what means.
>
> Answer: I was discriminated against because I am black by Chief Morales, Labor Relations, Internal Affairs, and **Stephanie Panoff**. Others who are not black (Hispanic/White/Polish) who went through the exact same type of investigations, hearings, received preferential treatment and did not have their rights violated the same as me.

(emphasis added).

The interrogatory answers do not explain *how* Panoff supposedly retaliated against Plaintiff "during [a] whistleblower hearing for exposing her involvement in corruption." The answer does *not* accuse Panoff of instructing Plaintiff to not investigate Plaintiff's allegations of improper conduct because she wanted to influence other

litigation (even though it would soon be the featured allegation in Lanier's Motion to Disqualify Panoff).

Three days later, on October 21, 2023, the City informed Pizzi that Lanier's discovery responses were insufficient. The City conferred on a motion to strike and for sanctions (concerning the listing of Panoff as a fact witness) by sending a draft, and it gave Plaintiff until October 27, 2023 to review the draft motion and provide his position.

But, rather than responding, Plaintiff filed his Motion to Disqualify Counsel [ECF No. 15] on October 27, 2023. The core allegation is that Panoff instructed Lanier "not to investigate a criminal complaint involving a staff member and only investigate the policy violation to reduce the City's exposure on a pending lawsuit." *Id.* at 2. The motion also accuses Panoff of "play[ing] a central role in the retaliation against both Lanier and Plaintiff Baptiste." *Id*. But it does not provide details about *how* Panoff participated in the retaliation.

The closest the motion comes to providing any specifics is to quote from interrogatory answers of Jean-Baptiste, another Pizzi client. According to those answers, Jean-Baptiste alleged that her claims involve "Retaliat[ion] by Stephanie Panoff during whistleblower hearing for exposing her involvement in corruption. (January 24, 31st, 2023 and March 7, 2023). Stephanie Panoff and Assistant Attorney Juan Perez participated and reviewed documents and changed documents during the investigation." Neither the motion nor Jean-Baptiste's interrogatory explain the allegation that Panoff "changed

documents" during the investigation (nor does it explain how Jean-Baptiste would even know this to be a fact sufficient to disclose in an under-oath interrogatory answer).

Lanier's Motion to Disqualify Panoff relies heavily on an affidavit signed by former City of Miami Police Chief Hubert Arturo "Art" Acevedo, who signed the affidavit discussing what Lanier supposedly told him about Panoff (and her alleged comments to not investigate Plaintiff's whistleblower allegations). Acevedo signed the affidavit on January 30, 2023, but Pizzi did not file it until October 27, 2023, when he attached it as an exhibit to the disqualification motion. October 27, 2023 is also the day he filed a similar disqualification motion in *Jean-Baptiste.* Pizzi did not mention the adverse (i.e., against his client) *Gomez* ruling in the disqualification motion he filed against Panoff in *Jean-Baptiste.*

Significantly, the Pizzi-filed disqualification motion filed here also does not mention that Magistrate Judge McAliley entered an Order denying a similar motion in *Gomez* several months earlier. Not only did the motion not seek to distinguish the *Gomez* ruling, but it ignored the ruling completely (even though Pizzi was counsel of record in that case and filed the unsuccessful disqualification motion).

Florida Bar Rules of Professional Conduct, Rule 4–3.3, "Candor Toward the Tribunal," states a lawyer shall not knowingly "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." *Id*. Rule 4–3.3(a)(3).

14

Although Judge McAliley's *Gomez* ruling (which is "squarely on point, involving the same lawyer and party, and directly adverse to the party") may not be "legal authority in the controlling jurisdiction," Lanier's counsel, Pizzi, "in the interest of full candor, should have addressed and sought to distinguish [it] in [his] Motion [for disqualification]" *Arellano v. American Airlines, Inc.*, 69 F.Supp.3d 1345, 1348, n.1 (S.D. Fla. 2014) (criticizing counsel for Defendant American Airlines for not citing an earlier unpublished, non-binding adverse ruling by another district judge in another case in the same district and noting that defense counsel represented American in *both* cases).

As noted, Plaintiff's counsel here also represents the plaintiff in *Gomez.* So his failure to mention that case "or even attempt to distinguish it in the briefing," is unwarranted and illogical (as opposing counsel, assistant city attorneys for the City of Miami, were also involved in *Gomez* and know all about the ruling there). *See Id.* at 1348.

In any event, Plaintiff's disqualification motion argues that the City has "the largest City Attorney's Office of any municipality in Miami-Dade County, if not the entire state of Florida." [ECF No. 15, p. 4]. It argues that cases like the lawsuits filed by Lanier and Jean-Baptiste are "handled by outside law firms or, at a minimum, attorneys who were not involved with underlying facts pertaining to the litigation." *Id*. It then argues that "[i]t is almost impossible to fathom why Panoff insists on personally handling the Jean-Baptiste and Lanier whistleblower lawsuits."

15

Pizzi next says that this lawsuit "should have immediately been assigned to outside counsel or other attorneys in what is the largest municipality in Miami-Dade County and/or Florida." He predicts that Panoff's "insist[ence] on assigning these cases to herself" demonstrates that she is "misusing her office to avoid focus on her own behavior and to avoid her sitting through a much needed deposition in this case."

In its opposition [ECF No. 27], the City referred to Judge Scola's Order (in which he warned that a determination of delay by Plaintiff may result in sanctions) and argued that sanctions against Plaintiff or his counsel "are due." The City contends that the motion was "filed for the purposes of delaying the orderly progress of this case or some other improper purpose." [ECF No. 27, p. 16].

In addition to arguing why it contends that Panoff did not commit a violation and why Rule 4-3.7 is inapplicable here, the City notes that none of the versions of Plaintiff's Complaint mention Panoff and that other important documents do not do so either. The City also contends that Panoff is not a necessary witness because "Plaintiff's testimony that he had a communication would suffice." [ECF No. 27, p. 6].

The City focuses on the delay associated with Lanier's filing of the disqualification motion, noting that it generates a permissible inference that the motion was a tactical one designed to produce an advantage. The City also argues that disqualification would generate a substantial hardship, a situation which could create an exception to disqualification.

16

<u>The Hearing</u>

During the hearing, Lanier's counsel argued that taking Panoff's deposition is "critical" and that he is entitled to both take her deposition and call her as a trial witness. He also said he disagrees with Judge McAliley's ruling on the disqualification motion he filed in *Gomez*.

He also contended that Panoff's testimony, at a deposition or at trial, would be adverse to her client, the City, because, if she were to testify truthfully, she would say that there is bid-rigging occurring in the City and that she told Lanier to not pursue the investigation. In addition, Pizzi claimed that Panoff's testimony could be adverse to the City if she were to testify about meeting with City officials and giving advice to them.

Pizzi also argued that disqualification would not create substantial prejudice because other well-qualified lawyers in the City Attorney's Office could take over the case. Alternatively, he said there are many qualified private attorneys in South Florida who could represent the City here.

Pizzi acknowledged, in response to a question from the Undersigned, that the City might be committing "a strategic blunder" by insisting that Panoff remain on the case even though he unequivocally announced his plan to seek her testimony as a fact witness. Nevertheless, he said he would not withdraw his disqualification motion because it is in his client's best interest to have her disqualified. He contended that Panoff "might be the

*worst* person to handle the case" because she is factually involved and her presumed self-interest in protecting herself might be challenged and/or questioned.

Plaintiff's counsel said he needs to take Panoff's deposition and that he would be liable for malpractice if he did not seek her deposition.

Given the delay in asserting Panoff's purported involvement as a fact witness and the failure to link her alleged activities to specific allegations of retaliation in the Amended Complaint, the Undersigned questioned Pizzi about the circumstances surrounding his client's most-provocative allegation. [The following summary and excerpts are from 2:21:05 to 2:23:24 of the December 1, 2023 hearing transcript]:

> The Undersigned: "Mr. Pizzi, the allegation, the foundation of your disqualification motion, that Ms. Panoff told Mr. Lanier to not investigate a corruption allegation because it might give her a problem in defending the City in another case, **who else was present** when that statement was purportedly made?"
>
> Pizzi: "Uh, judge, I**, I cannot answer that question right, right at this time**."
>
> The Undersigned: "Why not?"
>
> Pizzi: "*Probably*, Ms. Baptiste, who was the detective that he worked with in these cases" and *probably* Ms. Baptiste and *most likely* Jean Baptiste." . . . . I'm saying probably Ms. Baptiste . . . . And he reported it to his Chief."

(emphasis added).

The Undersigned then noted my surprise with Pizzi's answer, explaining that an experienced attorney like Pizzi would have taken his client "out to the woodshed" and

questioned him in detail about the allegation and would have learned if any witnesses heard Panoff's alleged instruction, and, if there were witnesses, who they are.

In response to another question, Pizzi said he "could have" filed the disqualification motion earlier (given that Miami's Former Police Chief signed his affidavit on January 30, 2023 and that the motion was filed on October 27, 2023). Pizzi said he did not file it earlier because he has not yet received the City's Answer to the Amended Complaint.

Panoff did not argue at the hearing, though she was present. Her colleague, Assistant City Attorney Bryan E. Capdevila, handled the disqualification motion for the City at the hearing. He noted that the Whistleblower Letter, a four-page, single-spaced missive, does not mention Panoff at all. He pointed out that Panoff has no power to terminate City employees and described her involvement as not relevant. He also argued that Plaintiff has never alleged with specificity how Panoff supposedly retaliated against him. The City also argued other witnesses besides Panoff could rebut Lanier's anticipated trial testimony about the alleged conversation. He additionally pointed out that Plaintiff's Reply memorandum never offered an explanation for the substantial delay highlighted in the City's opposition.

Concerning hardship to the City if disqualification were ordered, Capdevila said that (1) Panoff is uniquely qualified to represent the City here; (2) there are only a few other City-employed litigation attorneys available to represent the City; (3) other

attorneys are not available for the daily give-and-take of trial and trial preparation; (4) the cost of retaining private attorneys to replace Panoff would be substantial.

The City also emphasized that Panoff's testimony, if provided at trial, would not be adverse to the City. Moreover, Capdevila argued that the City would be "better off" having Panoff as a trial attorney (even if there is risk that there could be testimony *about* her actions and alleged comments at trial and even though there is a possibility that Plaintiff's counsel could himself call her as an adverse or hostile witness at trial).

## Applicable Legal Standards and Analysis

Disqualification of counsel is an "extraordinary remedy" that must be used "sparingly." *AlliedSignal Recovery Trust v. AlliedSignal, Inc.*, 934 So. 2d 675, 678 (Fla. 2d DCA 2006) (citations omitted); *see also Silvers v. Google Inc.*, No. 05-80387, 2007 WL 141153, at *1 (S.D. Fla. Jan. 16, 2007). Plaintiff, as the party seeking Panoff's disqualification, has the burden of proof. *THM Med. Servs., LLC v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 17-cv-920, 2018 WL 6620891, at *2 (M.D. Fla. Sept. 18, 2018); *Etkin* & Co., Inc. v. SBD LLC, No. 11-21321, 2012 WL 5398966, at *2 (S.D. Fla. Nov. 5, 2012); *Silvers,* 2007 WL 141153, at *1.

Disqualification "must be tested against the standard imposed by [the] Rules of Professional Conduct." *AlliedSignal Recovery Trust*, 934 So. 2d at 678 (alteration in original; quotations and citation omitted).[3]

In his Motion, Plaintiff argues that Rule 4-3.7 of the Florida Bar's Rules of Professional Conduct mandates Panoff's disqualification as counsel. [ECF No. 15, p. 5]. That Rule[4] states, in pertinent part:

**RULE 4-3.7 LAWYER AS WITNESS**

**(a) When Lawyer May Testify**. A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of the client unless:

---

[3]     This Court requires that attorneys admitted to the bar of this Court be "in compliance with all requirements of the Rules Regulating the Florida Bar." Rule 3, S.D. Fla. Local Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys.

[4]     In his motion and response, Plaintiff relied on only this rule. At the hearing, however, he suggested for the *first* time that Florida Rule of Professional Conduct 4-1.7, the conflict of interest rule, supports his disqualification motion. The Undersigned does not consider arguments raised for the first time in a reply, and I therefore do not consider a legal argument not raised in a motion or reply and then mentioned for the first time at a post-briefing hearing. See *United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) ("[T]his Court . . . repeatedly has refused to consider issues raised for the first time in an appellant's reply brief."); *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1328 n.4 (11th Cir. 2004) ("[A] party cannot argue an issue in its reply brief that was not preserved in its initial brief."); *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." (internal citation omitted)); *see also Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1222 n.8 (11th Cir. 2004) ("The district court was not presented with and did not resolve an equal protection argument based on Surfside's treatment of private clubs and lodges. Therefore, we will not consider this argument on appeal.").

(1) the testimony relates to an uncontested issue;

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) the testimony relates to the nature and value of legal services rendered in the case; or

(4) disqualification of the lawyer would work substantial hardship on the client.

Rule 4-3.7 addresses the circumstance when a client may need to call his **own** lawyer as a witness. Here, Plaintiff asserts something different: that **he** may need to call his opposing counsel, Panoff, as an adverse witness. By its own terms, this Rule does not call for Panoff's disqualification. *See Etkin & Co., Inc.*, 2012 WL 5398966, at *3 ("The focus of the analysis under Rule 4-3.7 is on the prejudice to the client, not prejudice to the opposing side who may call the attorney as a witness. Thus, where the ***client* does not intend to call his [own] attorney as a witness,** Rule 4-3.7 is **not** implicated." (quotations and citations omitted; emphasis supplied)).

"The Rules Regulating The Florida Bar do not mandate an attorney's automatic disqualification when he or she is called to testify by an opposing party." *Alto Constr. Co. v. Flagler Constr. Equip., LLC*, 22 So. 3d 726, 727–28 (Fla. 2d DCA 2099) (citing *AlliedSignal Recovery Tr.*, 934 So. 2d at 680). "The requirement that a lawyer withdraw when he expects to be a witness was not intended to permit an opposing party to call him as a witness and disqualify him from serving as counsel." *AlliedSignal Recovery Tr.*, 934 So. 2d at 680; *accord*

*Steinberg v. Winn–Dixie Stores, Inc.*, 121 So. 3d 622, 625 (Fla. 4th DCA 2013). "A conflict requiring disqualification, however, *could* arise if an **opposing** party called trial counsel as a witness and counsel's testimony was adverse to the client's position." *Steinberg*, 121 So. 3d at 625. *See also Furman v. Furman*, 233 So. 3d 1280 (Fla. 2d DCA 2018) (granting petition for writ of certiorari to quash an order granting a disqualification motion).

At the hearing, Plaintiff relied on *Steinberg's* comment that disqualification "could arise *if* an **opposing** party [(i.e., Lanier)] called trial counsel [(i.e., Panoff)] as a witness and counsel's testimony was "adverse to the client's position." 121 So. 3d at 625 (emphasis added). Plaintiff seeks to use this language to support his theory that disqualification is sometimes possible even when an opposing party calls the witness he wants to disqualify. But Lanier's argument is ultimately unpersuasive because he largely ignores the other component of the exception: that counsel's testimony be "**adverse** to the client's position." (emphasis added).

But the first problem with Plaintiff's theory is that he did not raise it in his motion or reply. Although he cited *Steinberg* in his motion, he did not do so for the theory at issue. Instead, he relied on it to support his quoted language that a counsel need not be disqualified if she is a necessary witness. Oddly enough, his motion cites *Steinberg* for the rule that a lawyer is "not a necessary witness" when "[e]ssentially, the same facts can be elicited at trial" from other witnesses -- which is one of the arguments the *City* advanced in *its* opposition. [ECF No. 15, p. 6]. Thus, Plaintiff is asking the Court to rely on a case

23

for a theory being argued for the first time at a hearing (which is procedurally impermissible) and, when he did mention the case in his motion, he did so in a way which *undermines* his newly-articulated rationale.[5]

The second flaw in Plaintiff's argument is that he, in effect, reads out the "adverse to the client's position" requirement. The City argued that Panoff's testimony would not be adverse (because she would deny the critical allegation that she instructed Lanier to not investigate a corruption allegation in order to help the City's litigation position in another case). Other than parroting the allegation that Panoff gave this instruction, Plaintiff's argument is that he consulted with Panoff during an investigation of another police officer. If Panoff were to testify at trial that she *did* instruct Lanier not to investigate, then that would be adverse to the City -- but the City has already filed an express denial

---

[5]       This unexpected and atypical method of citing legal authority appears to be the result of the method Plaintiff adopted in his motion: basically, he simply quoted or paraphrased legal principles in cases concerning disqualification, without explaining how they relate to his motion and sometimes quoting holdings which actually *support* the City's position.

At times, it was difficult to discern whether Plaintiff's motion was discussing the facts from the instant case or the facts from a case he cited for a generic principle. *See* [ECF No. 15, pp. 5-9]. Some portions of the motion and memorandum **support** the City's opposition, such as pointing out (twice, in the same memorandum) that disqualification is an extraordinary remedy which should be used sparingly and noting that disqualification motions are generally viewed with skepticism because disqualification impinges on a party's right to employ a lawyer of choice and the motions are often interposed for tactical purposes. Other sections appear to be little more than quotes of headnote summaries (such as a paragraph beginning with "Petitioners argue that there were other witnesses to the *battery* and that their counsel will not necessarily be a witness at trial."). *See Id.* at 8 (emphasis added). The instant case does not concern a battery.

of that, and there is no reason to believe that Panoff would reverse her testimony at trial and suddenly admit to the allegation.

A failure to show that Panoff's trial testimony "would be adverse" to the City dooms Lanier's argument about the exception to the rule that disqualification is required only when the *City* calls Panoff as its own trial witness. *See Furman*, 233 So. 3d at 1284 (noting movant had not shown attorney's trial testimony would be adverse to client's "factual assertions or account of events"); *see Alto Constr. Co.*, 22 So. 3d at 728; *see also AlliedSignal Recovery Tr.*, 934 So. 2d at 680 ("AlliedSignal, however, made no showing that [the Trust's attorney] would give any testimony 'sufficiently adverse to the factual allegations or account of events offered on behalf of the [Trust].'" (second alteration in original)); *Therriault v. Berghmans*, 788 So. 2d 1119, 1120 (Fla. 2d DCA 2001) (granting writ of certiorari and concluding that disqualification was "premature" where attorney had not "been deposed as to what his testimony [would] be" as to the matter at issue); *Steinberg*, 121 So. 3d at 625 (granting petition for writ of certiorari where movant failed to prove that opposing party's attorney's testimony would be "sufficiently adverse" to the position of the opposing party to warrant disqualification); *cf. Singer Island Ltd. v. Budget Constr. Co.*, 714 So. 2d 651, 652 (Fla. 4th DCA 1998) (holding that trial court properly denied motion to disqualify where movant showed only a mere possibility that disqualification may be necessary and counsel had not been deposed to determine if his testimony would support a motion to disqualify).

25

As we have already pointed out, courts look at a party's motion to disqualify opposing counsel with healthy suspicion, knowing that an unjustified motion could be improperly used for the strategic advantage of denying an adversary their counsel of choice. Plaintiff here has not met his burden to show that, under any rule or common law, this Court must disqualify Panoff as the City's counsel.

But let's move on from ruminating about what could happen at trial if the City maintains its decision to use Panoff as lead trial counsel and switch to a discussion of the **timing** of the disqualification motion. Courts are consistent and clear that parties must file motions to disqualify opposing counsel with "reasonable promptness." *THM Med. Servs., LLC,* 2018 WL 6620891, at *5; *Etkin & Co., Inc.,* 2012 WL 5398966, at *5; *Great Am. Ins. Co. v. Gen. Contractors & Constr. Mgmt., Inc.,* No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008); *see also Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.* No. 04-80090-CIV, 2007 WL 433084, at *3 (S.D. Fla. 2007) ("Disqualification is an extraordinary remedy to be used sparingly. Breckenridge has failed to exercise due diligence in filing its motion for disqualification . . . ." (quotations and citation omitted)).

Plaintiff's disqualification motion was hardly reasonably prompt. It was the *opposite* of prompt.

Plaintiff offers no *persuasive* justification for his extraordinary delay, nor could he, given that he was personally familiar -- in real time -- with the circumstances he offers as justification for unseating Panoff as the City's counsel. If Plaintiff's core allegation is

correct, then Panoff told former City of Miami Police Chief Acevedo about Panoff's "don't investigate" instruction at some point <u>before</u> January 30, 2023. We use this date because Acevedo's affidavit was signed on that date. The affidavit does not pinpoint when Lanier told him about Panoff's directive, but it had to be before January 30, 2023.

So Plaintiff waited at least six months (from the April 3, 2023 filing of this lawsuit to the October 2023 filing of the motion) before filing the disqualification request in this case. Because the disqualification motion and Acevedo's affidavit do not reveal when Panoff's purported instruction was given, Plaintiff and his counsel may have known about Panoff's alleged directive for more than a year before the motion was filed.

The purpose behind the rule of reasonable promptness is "to prevent a litigant from using the motion as a tool to deprive his opponent of counsel of his choice after completing substantial preparation of the case." *Transmark, USA, Inc. v. State of Fla., Dep't of Ins.*, 631 So. 2d 1112, 1116 (Fla. 1st DCA 1994) (citation omitted). In its Response and at the hearing, the City made a compelling record that disqualification of Panoff would create a substantial hardship for the City. *See* [ECF No. 27, pp. 10–13].

At the hearing, Pizzi admitted that he "could have" filed the disqualification motion earlier. He claimed that he did not do so because the City had not yet filed an Answer. But that explanation makes little sense. The City has *still* not filed an Answer, as its Motion to Dismiss [ECF No. 7], filed on July 17, 2023, is still pending. Moreover, why would the filing of an Answer somehow generate grounds to file a disqualification

27

motion? Plaintiff's counsel never explained this no-link situation. And why would a disqualification motion somehow be inappropriate before an answer is filed? Plaintiff never gives a logical theory.

Plaintiff's allegations against Panoff are based on a specific allegation of misconduct (i.e., Panoff instructed Plaintiff to not investigate corruption), a hearsay affidavit from the former police chief (who merely says that Lanier told him that Panoff supposedly made the comment) and a sweeping and vague assertion that Panoff somehow retaliated against Lanier for being a whistleblower. Lanier is currently a high-ranking police department official, so his testimony may well be credible.

Still, there are many reasons to challenge the accuracy and completeness of Plaintiff's allegations:

First, he and his attorneys delayed the disclosure of the so-called ground for disqualification. Second, the timing of the filing of the motion seems motivated by largely strategic reasons. Third, the purported reason for the delay (i.e., the City had not filed an answer) is fundamentally illogical and therefore unpersuasive). Fourth, Pizzi said he did not know if there were any witnesses to Panoff's alleged directive -- an assertion which is inconsistent with the anticipated due diligence of an experienced litigation attorney like Pizzi. Fifth, his motion ignores the adverse ruling in *Gomez*.

On the other hand, the Undersigned will not pass judgment on the wisdom of the City's decision to not retain counsel other than Panoff when Plaintiff has accused her of

professional impropriety. If Lanier is permitted at trial to mention his allegations against Panoff (and this Order does not expressly or implicitly indicate that the scenario would be allowed or rejected), then the City would be in the awkward (to use a benign term) position of confronting those allegations before a jury while being foreclosed (through its commitment to not call Panoff as a witness) from calling Panoff as a witness to respond to the allegations.

Indeed, the jury trial could be even more problematic for the City if Plaintiff's allegations and evidence about Panoff were permitted. Lanier, for example, might call Panoff as an adverse witness in his case in chief and be permitted to ask her leading questions under the hostile witness rule.[6] Pizzi has already suggested that he would likely pursue that tactic. The optics likely generated by an in-court drama where Plaintiff's attorney called Panoff as a hostile witness and challenged her with a barrage of leading questions could be cringe-inducing for the City, even if Panoff credibly denied the allegations. At the risk of being redundant, I again stress that this is a hypothetical discussion, as neither Judge Scola or I have determined whether that in-trial drama would be permitted (or whether Plaintiff would be foreclosed from calling Panoff as a witness or even mentioning her name or alleged involvement).

---

[6]     Federal Rule of Evidence 611(c) provides that a court "should allow leading questions" "when a party calls a hostile witness, an adverse party or a witness identified with an adverse party." The Undersigned has little doubt that Panoff would fit into one or more of those categories.

Plaintiff has not met his burden to establish that disqualification of Panoff is required under Rule 4-3.7, so the Undersigned **denies** the motion.

<u>Should Sanctions Be Awarded Because of Delay?</u>

Judge Scola indicated that he might impose sanctions if it is determined that Plaintiff filed the disqualification motion "in order to *delay* these proceedings." [ECF No. 22 (emphasis added)]. The City also requested sanctions be awarded under Fed. R. Civ. P. 11 due to Plaintiff's actions. [ECF No. 16]. Lanier is the plaintiff here, and plaintiffs typically strive to move their case forward and avoid delay. The Undersigned does not view Lanier's motivation as one based on a *delay* strategy.

However, there are circumstances suggesting that Lanier's motion was filed for largely *strategic* purposes and to gain a litigation advantage.

Lawyers often take steps for strategic purposes. For example, they file motions to exclude the opposing party's experts. *See, e.g., Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-24277-CIV (S.D. Fla. June 12, 2017) (omnibus order involving each side's challenges to **all** expert witnesses retained by opponent -- for a 12-witness challenge ruling). Parties seek to exclude hearsay evidence, even if true, for strategic advantage. *Passmore v. Travelers Cas. & Sur. Co.*, No. 2:19-CV-59, 2021 WL 12103008, at *8 (S.D. Ga. Apr. 16, 2021) (granting the defendant's motion to exclude hearsay evidence because the plaintiff failed to make a discernable argument that her testimony is not hearsay or an admissible exception").

In my view, the critical inquiry for a decision on whether sanctions are appropriate here for a strategy-motivated disqualification motion is whether the litigation tactic is *unduly* or *unfairly* strategic, similar to Federal Rule of Evidence 403, which permits the exclusion of relevant evidence after a balancing test involving, among other factors, "**unfair** prejudice." Determining whether Lanier's disqualification motion was filed for an improper purpose, such as obtaining an unfair or undue strategic advantage, may well depend on whether the alleged factual basis for it is *true.*

If Panoff had in fact instructed Lanier to not investigate a corruption allegation and/or provided advice to law enforcement and city officials on how to retaliate against Lanier, then the motion would be evaluated differently than one with an incorrect or false factual premise. Plaintiff could be faulted for filing his motion very late even if the grounds were true and meritorious, but that type of fault is substantially different than the blame which would be placed on him and his counsel if the motion were extremely tardy **and** false.

Although there are reasons to be skeptical of the motion's accuracy, there also appear to be arguments which could be used to persuade a jury of its factual correctness. Evaluating sanctions for pre-trial conduct is often best performed after trial. *Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir. 1987) ("Although the timing of sanctions rests in the district judge's discretion, Rule 11 sanctions 'normally will be determined at the end of litigation.'")(internal cite omitted); *Baker v. Alderman*, 158 F.3d 516, 523 (11th Cir. 1998)

(same); Wright and Miller, Federal Practice and Procedure: Civil 3d § 1337.1 (2004) (stating that when "the challenged conduct is the institution of the action itself . . . the question whether there has been a Rule 11 violation generally is not decided until after the litigation is completed, in order to avoid delaying the disposition of the merits of the case").

Assessing the potential sanctions issue now would require, at least implicitly, a credibility finding. Is Lanier telling the truth about Panoff or is Panoff's denial of the allegations factually correct? Phrased differently, the sanctions inquiry for the filing of the unsuccessful disqualification motion would, in effect, require a court to reach a conclusion about who is lying and who is telling the truth. If that were not dicey enough, courts often permit witnesses to testify at trial even after they have committed perjury and even when they admit to providing perjurious testimony. In *United States v. Hewitt,* the Eleventh Circuit held that a judgment of acquittal was not required merely "because the government's case includes testimony by an 'array of scoundrels, liars and brigands.'" 663 F.2d 1381, 1385-86 (11th Cir. 1981) (internal citation omitted). Indeed, it is well established that "'[c]redibility determinations are the exclusive province of the jury.'" *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997) (quoting *United States v. Parrado*, 911 F.2d 1567, 1571 (11th Cir. 1990) (some alterations in original)).

The City may consider Lanier's allegation to be likely false, but that does not, in and of itself, mean that the Court should now deem Panoff's denial to be the factually

correct version and use that assessment to now justify a sanctions award. Trial courts permit witnesses to testify despite substantial pre-trial misconduct, such as perjury and other criminal activity, and appellate courts "do not review the jury's credibility determination unless such testimony is incredible as a matter of law." *United States v. Hampton*, 828 F. App'x 687, 689 (11th Cir. 2020) (citing *United States v. Feliciano*, 761 F.3d 1202, 1206 (11th Cir. 2014)).

Significantly (for purposes of the instant issue about potential sanctions against Lanier and/or his attorney), "the fact that a witness has lied in the past[7] and thought the present testimony would benefit her does not make the testimony incredible." *Hampton*, 828 F. App'x at 689 (citing *United States v. Thompson*, 422 F.3d 1285, 1292 (11th Cir. 2005)). Our appellate court affirmed a criminal conviction in the face of a challenge over credibility concerning a critical government witness who previously lied to police and caused two persons to go to jail for a killing they did not commit. *See United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009). In doing so, the Court relied upon the basic rules discussed above: that credibility determinations are left to the jury and will not be disturbed unless the testimony is incredible as a matter of law. *Id*.

---

[7] The discussion of lying is merely one concerning *general* principles of credibility. It is not intended to suggest that Lanier or Panoff has lied. Their view of his allegations are diametrically opposed, to be sure. One day, a jury may well decide who is lying and who is telling the truth. Or maybe the jury will not be permitted to make the decision because, for example, Panoff's so-called involvement might be ruled off limits at trial. But this Order reaches no conclusions about credibility or whether the Court would permit Plaintiff to call Panoff as a fact witness in a jury trial.

Given the history here, and recognizing that a substantive decision about sanctions now would require credibility determinations, the Undersigned believes it prudent to await the end of the trial (or the end of the case, if it were to be resolved through a non-trial mechanism, such as an Order granting a motion to dismiss or for summary judgment) to decide the issue.

For the same reasons, the Undersigned will **deny** the City's Motion to Strike Panoff (as a fact witness) from Lanier's Amended Rule 26 Disclosures and his interrogatory answers [ECF No. 16]. Granting the motion would require the Undersigned to decide that Panoff is not, and never will be, a fact witness in the case. That would require me to conclude that Lanier, a police department lieutenant, is lying about what Panoff supposedly told him and what she supposedly did to retaliate against him. There are, of course, myriad concerns about Plaintiff's version, including his extremely tardy disclosure of his purported concern about Panoff being a fact witness, but they are not now sufficient to comfortably permit me to boldly conclude that he is lying and completely foreclose Panoff's possible involvement as a fact witness.

At bottom, the factual record is not developed well enough for me to safely rule without issuing what would be similar to an impermissible advisory opinion. *See generally TransUnion LLC v. Ramirez*, 594 U.S. ----; 141 S. Ct. 2190, 2203–04, 210 L. Ed. 2d 568 (2021) ("Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities. And federal courts do not issue advisory

opinions. As Madison explained in Philadelphia, federal courts instead decide only matters 'of a Judiciary Nature.' 2 Records of the Federal Convention of 1787, p. 430 (M. Farrand ed. 1966)). In sum, under Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'").

If Lanier plans to take Panoff's deposition testimony as a fact witness, then he must first confer with the City and see if it and/or Panoff objects. If there is an objection, then Plaintiff will file a motion for leave to take Panoff's deposition. The motion will be double-spaced and no longer than ten (10) pages, excluding the signature block and certificate of service. The City's response, which would in many respects function as a *de facto* motion for protective order, will be subject to the same page limit, and it will be due in ten (10) days. An optional reply from Plaintiff will be no longer than four (4) double-spaced pages, and it will be filed within five (5) days after service of the response. *See also Roderick Revocable Living Tr. v. XTO Energy, Inc.*, No. 08-1330-JTM, 2009 WL 603641, at *1, n.4 (D. Kan. Mar. 9, 2009) ("Plaintiff references potential discovery disputes related to its use of the term "affiliates." . . . The court declines to express any advisory opinion concerning hypothetical discovery issues that are not properly before the court." (record citation omitted)).

## Conclusion

The Undersigned **denies** Plaintiff's disqualification motion [ECF No. 15], **denies** (without prejudice) the City's motion to strike Panoff as a fact witness [ECF No. 16] and

imposes a protocol for resolving a discovery dispute should Plaintiff take steps to take

Panoff's deposition and be confronted with an objection about his plan.

      **DONE AND ORDERED** in Chambers, in Miami, Florida, on December 8, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies Furnished to:</u>**
The Honorable Robert N. Scola, Jr.
All Counsel of Record