United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Brandon Lanier, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 23-22510-Civ-Scola |
| | ) |
| City of Miami, Defendant. | ) |

**Order Granting Motion to Dismiss**

This matter is before the Court on the Defendant the City of Miami's (the "City") motion to dismiss the Plaintiff Brandon Lanier's ("Lanier") amended complaint. (Mot., ECF No. 7.) Lanier has responded opposing the City's motion (Resp., ECF No. 11), and the City has replied (Reply., ECF No. 14). Having reviewed the record, the parties' briefs, and the relevant legal authorities, the Court **grants** the City's motion to dismiss. (**Mot., ECF No. 7**.)

1. **Background**[1]

Lanier brings this action against the City for damages resulting from the latter's alleged violations of the Florida Whistle-blower's Act, Fla. Stat. § 112.3187, *et seq.* ("FWA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et seq.* ("Title VII"). Lanier is a black male currently working as an employee of the City. (*Id.* ¶ 4.) Lanier started working for the City as a police officer in 2008. (*Id.* ¶ 10.) Since then, he also served the City as a police sergeant, police lieutenant, and, eventually, as a police commander. (*Id.* ¶ 9.) At all times material to this action, Lanier was working as a commander in the City's Internal Affairs Section. (*Id.* ¶ 8.)

At some point during Lanier's tenure as a commander in the Internal Affairs Section, he and another individual referred to as Detective Wanda Jean-Baptiste were assigned to an official misconduct investigation relating to two staff members, Ronald Papier and Nerly Papier. (*Id.* ¶ 14.) These individuals had been discovered to have been involved in improper conduct and were eventually terminated by the Chief of Police with the approval of the City Manager. (*Id.* ¶¶ 15–18.) Several months after their termination, the Papiers

---

[1] This background is based on the allegations in Lanier's amended complaint. For purposes of evaluating the City's motion, the Court accepts Lanier's factual allegations as true and construes the allegations in the light most favorable to him per Federal Rule of Civil Procedure 12(b)(6). The Court notes, however, that the amended complaint struggles to set forth a cohesive recitation of facts. Much of the factual narrative therein fails to follow a clear chronology and omits important context. Accordingly, the Court does its best to reconstruct the relevant background here.

filed a complaint with the City's Civilian Investigative Panel ("CIP"), which forwarded the complaint to the Internal Affairs Section, where it reached Lanier. (*Id.* ¶¶ 14, 18–20.) Lanier investigated the complaint and "made findings regarding malfeasance and misfeasance by current Chief of Police Morales resulting in a formal reprimand[,] which Morales agreed to." (*Id.* ¶ 19.) In addition, "[d]uring the course of these proceedings, Lanier filed written complaints concerning the malfeasance, misfeasance and improper conduct of both [the] Papiers and Morales and participated in investigations of same, reporting the conduct to the City Manager and others." (*Id.* ¶ 20.)

Sometime after the foregoing investigation took place, and apparently as a result of Lanier's involvement therein, allegations began to circulate regarding Lanier and Detective Jean-Baptiste. (*Id.* ¶ 22.) These allegations, which Lanier describes as "frivolous," pertained to Lanier and Jean-Baptiste "violating the departmental policy and Florida's Officer Bill of Rights." (*Id.*)  In response, Lanier and Jean-Baptiste requested compliance hearings to force the City to interview all witnesses knowledgeable of the allegations made against them. (*Id.* ¶¶ 23–24.) Specifically, Lanier and Jean-Baptiste both wanted to provide their own statements. (*Id.* ¶¶ 24–26.) However, finding that they were not relevant witnesses, the City denied them the opportunity to do so, thus preventing Lanier and Jean-Baptiste from providing evidence and defending themselves from the allegations against them. (*Id.* ¶¶ 26–27, 29.) Moreover, in addition to restraining Lanier's right to specific witnesses, the City also denied him the right to use his paid attorney, Griska Mena, from the Southern Florida Police Benevolent Association. (*Id.* ¶¶ 31–32.) Even though attorney Mena had been listed as a witness to the compliance hearing, she was escorted out of the building and denied attendance. (*Id.* ¶ 32.) In contrast, the City allowed Nerly Papier, the complainant of Lanier and Jean-Baptiste's investigation, to attend the hearing as a way to intimidate them. (*Id.* ¶ 33.)

Lanier also claims that he was involved in at least two other investigations, which, though not at all clear, seem to have taken place before the foregoing compliance hearings.[2] First, Lanier alleges that, around November 2021, he was instructed by Chief Morales to investigate Captain of Police Javier Ortiz "with direction to make a finding of guilt and recommend termination." (*Id.* ¶¶ 55–56; *see also* Ex. A to Am. Compl., ECF No. 1-1.) Even though Lanier refused Chief Morales's direction, and declined to recommend that Ortiz be terminated, Morales ultimately terminated Ortiz anyway. (*Id.* ¶¶

---

[2] Later in his amended complaint, Lanier also mentions two investigations that were lodged against him and Jean-Baptiste in early 2022, which the Court understands, based on similarities in the allegations, to relate to the same circumstances giving rise to the compliance hearings mentioned above. (*Id.* ¶¶ 67–85.)

57–58.) Ortiz was eventually reinstated to his position and provided a significant settlement. (*Id.* ¶ 59.) Second, Lanier alleges that, on Mary 19, 2021, he recommended then Assistant-Chief Morales for written reprimand as a result of his improper failure to inquire about the details of an automotive accident involving Nerly Papier, his subordinate. (*Id.* ¶ 60; *see also* Ex. B to Am. Compl., ECF No. 1-1.) Although Morales "admitted" at that time that he engaged in misconduct by failing to inquire into the details of the accident, "[i]mmediately upon becoming Chief of Police, Morales retailed against [Lanier] by demoting [him] and restricting [his] due process right." (*Id.* ¶¶ 60–62.)

Lanier claims that, due to his "involvement in overseeing the investigation of Ronald and Nerly Papier, overseeing the investigation of," otherwise undiscussed, "[Sergeant]-at-Arms Luis Camacho, and coming forward with information about corruption and wrongdoing involving Chief Manuel Morales and others from within the department, he has been retaliated against" in violation of the FWA. (*Id.* ¶¶ 34, 86–97.) Lanier further explains that "[t]his retaliation for him reporting corruption and cooperating in investigations has included reprimands, demotions, insisting that he not be reinstated, denial of benefits, and even using City resources to contact Federal Law enforcement agencies to black[-]list him from employment solely because he is a whistleblower." (*Id.* ¶ 36.) In addition, Lanier claims that he has been illegality discriminated and retaliated against in violation of Title VII. (*Id.* ¶¶ 98–107.)

### 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Analysis

Lanier's amended complaint is comprised of three counts: retaliation in violation of the FWA (Count One); discrimination based on race in violation of Title VII (Count Two); and retaliation in violation of Title VII (Count Three). For the reasons set forth below, the Court finds Lanier fails to a state a claim upon which relief can be granted on any of these bases.

### A. Lanier fails to plead a prima facie case of retaliation in violation of the FWA.

The City argues that Lanier fails to state a prima facie case for relation under the FWA because he does not adequately allege that he engaged in any protected activity nor that he suffered an adverse employment action as a result of said protected activity. In his response opposing dismissal, Lanier is adamant that he has properly pled a cause of action under the FWA. Rather than engage with the facts as pled to explain why they establish a prima facie case under the FWA, however, Lanier's response only copies and pastes allegations from the amended complaint to argue, in a conclusory manner, that "[i]t is not possible to plead a more clear-cut case of retaliation" under the FWA. (*See* Resp. 12, ECF No. 11.) The Court strongly disagrees with Lanier.

"The FWA prohibits a public employer from taking an adverse personnel action against an employee 'who reports to an appropriate agency violations of law on the part of a public employer . . . that create a substantial and specific danger to the public's health, safety, or welfare.'" *McAlpin v. Town of Sneads*, 61 F.4th 916, 928 (11th Cir. 2023) (quoting Fla. Stat. § 112.3187(2)). Thus, "a plaintiff claiming retaliation under the FWA must establish a prima facie case by demonstrating: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) the two are causally related." *Berber v. Wells Fargo, NA*, 798 F. App'x 476, 478-79 (11th Cir. 2020) (citing *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)).

As to the first prong, "[u]nder the FWA, for the disclosure of information to be a 'statutorily protected activity,' the burden is on the plaintiff to show that he disclosed (1) protected information (2) to an individual or entity identified in the statute (3) in a protected manner." *McAlpin*, 61 F.4th at 928 (citing Fla. Stat. § 112.3187(5)-(7); *Rice-Lamar v. City of Fort Lauderdale*, 853 So. 2d 1125, 1132-33 (Fla. 4th DCA 2003)). "Both the text and structure of the FWA make clear that protected information is narrow in scope." *Id.* Specifically, "[t]he information disclosed . . . must include" one of the following to qualify as protected:

> (a) Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an

> agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare.
> (b) Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.

Florida Statute § 112.3187(5). Here, Lanier has failed to plead facts to establish that any of his alleged instances of whistleblower activity were protected under the FWA.

To begin, the vast majority of Lanier's allegations as to his whistleblower activity are vague and conclusory in nature. By way of example, the amended complaint is rife with statements to the effect that "Lanier filed written complaints concerning the malfeasance, misfeasance and improper conduct of both Papiers and Morales[,]" Lanier "reported malfeasance, misconduct, and illegality in written and signed complaints[,]" and Lanier "reported corruption in terms of improper efforts by Chief Morales and others to influence the impartiality of [the City's] Internal Affairs Investigations." (*See* Am. Compl. ¶¶ 20, 46, 49, ECF No. 1-1.) These allegations, however, provide little to no factual information as to the nature of the wrongful conduct at issue, the content of what Lanier actually reported, or who he made the reports to and when.

The closest Lanier comes to pleading actual facts in support of his purported whistleblower conduct comes in the form of the exhibits he attaches to his amended complaint, as these show snippets of interactions Lanier seems to have had with supervisors at the City. However, these materials, too, fail to show that Lanier engaged in statutorily protected activity as defined in the FWA. For example, Lanier attaches to his complaint a, mysteriously undated and otherwise unmarked, memorandum he alleges "explicitly inform[ed] the City of acts of corruption for which [he] was later demoted." (*See* Am. Compl. ¶ 66, ECF No. 1-1 (referencing Ex. D thereto).) A close review of this memorandum fails to reveal the type of information contemplated by Florida Statute § 112.3187(5). Although, the memorandum fails to follow a clear chain of events, as best the Court can discern, the writing reveals, at most, professional differences between Lanier and Chief Morales, not anything amounting to either a "violation or suspected violation of any federal, state, or local law, rule, or regulation . . . which creates and presents a *substantial and specific danger to the public's health, safety or welfare,*" or "[a]ny act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty[.]" *See* Florida Statute § 112.3187(5)(a), (b) (emphasis added).

Furthermore, even if Lanier had established his participation in statutorily protected expression, he fails to allege any facts demonstrating a causal link between such expression and any purported adverse employment action. To satisfy the causal link prong of an FWA claim, a "[p]laintiff must show that the decision-maker responsible for the adverse employment action was actually aware of the protected activity at the time he took the adverse action." *Verna v. Pub. Health Tr. of Miami Cnty*, 539 F. Supp. 2d 1340, 1357 (S.D. Fla. 2008) (citing *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). "A fact that is unknown to an actor cannot motivate his action. Simple as that." *Olbek v. City of Wildwood*, 850 F. App'x 714, 721 (11th Cir. 2021). Here, though Lanier alleges that he suffered myriad adverse employment consequences as a result of his whistleblower activity, the only time he identifies a decisionmaker as to any of these consequences is when he alleges that Chief Morales demoted Lanier after he participated in the investigation against Morales. (*See* Am. Compl. ¶¶ 40–45, 62, ECF No. 1-1.) However, Lanier fails to plead any facts demonstrating that Chief Morales knew of his participation in that investigation or of the statements he made against Chief Morales. (*See generally id.*) Indeed, Lanier does not even plead a clear timeline of events, from which it may be discerned whether Chief Morales's alleged involvement in Lanier's demotion could reasonably have been motivated by Lanier's purported statements against him.

Accordingly, because Lanier has failed to plead facts to establish either the statutorily protected activity or causation prongs of an FWA claim, Count One of his amended complaint must fail.

### B. Lanier fails to state a claim for race-based discrimination in violation of Title VII.

The City next argues that Lanier fails to state a claim for race-based discrimination in violation of Title VII because he has not pled facts to establish that similarly situated employees outside of his protected class were treated differently or that he suffered an adverse employment action. Unsurprisingly, Lanier counters that he has adequately supported his race-based discrimination claim, though, in his response, Lanier once again does little more than copy and paste, verbatim, the allegations already included in his amended complaint. The Court agrees with the City that Lanier's amended complaint fails to supply facts that would satisfy the elements of Lanier's claim of discrimination under Title VII.

"[C]omplaints alleging discrimination . . . must meet the 'plausibility standard' of *Twombly* and *Iqbal*." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011). Thus, Lanier's amended complaint

must contain "sufficient factual matter" to support a reasonable inference that the City engaged in intentional discrimination against him when, as he alleges, it refused him the same "preferential treatment" given to non-black officers during the course of investigations lodged against him. *Henderson*, 436 F. App'x at 937.[3] There are a number of ways Lanier can do this, using "either direct evidence or circumstantial evidence to show . . . discrimination." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022).

Since Lanier does not set forth any allegations of direct evidence of discrimination, one way Lanier could state his discrimination claims, through circumstantial evidence, is by pleading facts that could establish the City's discrimination through the *McDonnell Douglas* framework. *See Jaffe v. Birmingham Gastroenterology Associates, P.C.*, 2:20-CV-01821-KOB, 2021 U.S. Dist. LEXIS 176427, 2021 WL 4220356, at *2 (N.D. Ala. Sept. 16, 2021) ("[T]he traditional methods of proving Title VII claims remain relevant, as helpful guides to the determination of the issue.") (cleaned up). Under the *McDonnell Douglas* framework, a plaintiff bears the burden of establishing a prima facie case of discrimination by demonstrating (1) membership in a protected group; (2) an adverse employment action; (3) qualification for the job in question; and (4) either replacement by or less favorable treatment than a similarly situated individual outside the plaintiff's protected class. *Jenkins*, 26 F.4th at 1249. Lanier has failed to plead facts that would allow the Court to reasonably infer that he satisfies the fourth prong.

As to this fourth prong, Lanier "must identify a comparator outside of his protected class who was s*imilarly situated in all material respects*, yet was treated more favorably under the same circumstances." *Hester v. Univ. of Alabama Birmingham Hosp.*, 798 F. App'x 453, 457 (11th Cir. 2020) (emphasis in original) (otherwise cleaned up). In opposition to the City's motion, Lanier restates his allegations that, during the investigations, "the white officers were allowed to provide statements whereas the black officers, including Lanier, were not allowed to provide a statement[,]" "[t]he white officers were ultimately not disciplined after being given full due process, while the black officer Lanier

---

[3] As specifically alleged by Lanier, the City "restricted his right to counsel and restricted his right to specific witnesses[,] . . . denied [Lanier] the right to utilize his paid attorney from the South Florida Police Benevolent Association, an attorney who was allowed by the City multiple times to defend Anglo/Hispanic non-black officers in the exact same type of proceeding." (Am. Compl. ¶ 31, ECF No. 1-1.) In addition, Lanier alleges that "the white officers were allowed to provide statements whereas the black officers, including Lanier, were not allowed to provide a statement[,]" "[t]he white officers were ultimately not disciplined after being given full due process, while the black officer Lanier was targeted and received adverse action[,]" and the white officers "received different recommendations of discipline and imposition of discipline based on race." (*Id.* ¶¶ 72, 79, 83.)

was targeted and received adverse action[,]" and the white officers "received different recommendations of discipline and imposition of discipline based on race." (*Id.* ¶¶ 72, 79, 83.) However, these allegations do not permit the Court to infer that Lanier's co-workers who were outside of his protected class and purportedly given preferential treatment during the course of the investigations were similarly situated to Lanier in all (or even any) material respects.

      The closest Lanier comes to identifying a comparator outside of his protected class is when he alleges that "in regard to both investigations [he] and Sergeant Perez[,]" who was Hispanic and non-black, "held the same roles[,]" and that "[b]oth investigations concluded with the investigators violating the same policies and procedures, yet they received different recommendations of discipline and imposition of discipline based on race." (*Id.* ¶¶ 82–83.) However, these two statements, which leave much to be desired, fall far short of providing sufficient information from which the Court can infer that Perez, or any of the other non-black "investigators," were similarly situated in all relevant aspects to Lanier. *See Henderson v. Dade Cnty. Police Benev. Ass'n, Inc.*, 14-20321-CIV-MORENO, 2014 U.S. Dist. LEXIS 98159, 2014 WL 3591600, at *8 (S.D. Fla. July 18, 2014) (Moreno, J.) (dismissing discrimination claims where the plaintiff's conclusory assertions that Hispanic males were promoted to the exclusion of Black women were "without factual support as to how each was similarly-situated in all relevant aspects to the Plaintiff" and, were, therefore, "insufficient"). Moreover, all of Lanier's other allegations on this point are conclusory in nature, failing to provide any supporting factual information, such as whether the nature of the investigations against the non-black employees who received preferential treatment were similar to those lodged against Lanier, or whether Lanier and those other employees had comparable qualifications and skills.

      At bottom, Lanier's allegations, at most, are nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and therefore "do not suffice." *Watts v. Ford Motor Co.*, 519 F. App'x 584, 586 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). While a plaintiff complaining of workplace discrimination need not set forth every detail of his employment or every single instance of the discriminatory conduct he endured, he must nonetheless provide at least some "nonconclusory descriptions of specific, discrete facts of the who, what, when, and where variety" that plausibly show he is actually entitled to relief. *Watts*, 519 F. App'x at 587 (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)); *see Veale v. Fla. Dep't of Health*, 2:13-CV-77-FTM-38UAM, 2013 U.S. Dist. LEXIS 105665, 2013 WL 5703577, at *5 (M.D. Fla. July 29, 2013)

(requiring "allegations of specific facts to explain how the disparate treatment occurred" in order to properly plead discrimination).

Nor do any of Lanier's other allegations, taken together, otherwise "present[] a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (cleaned up). A plaintiff may meet this standard by showing, "among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) (cleaned up). "The 'convincing mosaic' method of proof can be a fallback for plaintiffs," like Lanier, "who fail to allege a similarly situated comparator under *McDonnell Douglas*." *Jaffe v. Birmingham Gastroenterology Associates, P.C.*, 2:20-CV-01821-KOB, 2021 U.S. Dist. LEXIS 176427, 2021 WL 4220356, at *4 (N.D. Ala. Sept. 16, 2021). Again, Lanier's allegations come up short. There is simply no factual content in the amended complaint from which the Court can infer that Lanier was the victim of racially motivated discrimination.

Thus, to summarize, Lanier has failed to plead facts establishing discrimination against him under Title VII. Lanier's complaint does not plead sufficient facts to allow for a plausible a link between the employment differences he cites and his race. Correlation and causation are not the same; possibility and plausibility are distinct. While Lanier's "allegations might have survived a motion to dismiss prior to *Twombly* and *Iqbal*[,] now they do not." *Ansley v. Fla. Dept. of Revenue*, 409CV161-RH/WCS, 2009 U.S. Dist. LEXIS 57916, 2009 WL 1973548, at *2 (N.D. Fla. July 8, 2009) (requiring a "plaintiff in an employment-discrimination case [to] allege facts that are either (1) sufficient to support a plausible inference of discrimination, or (2) sufficient to show, or at least support an inference, that he can make out a prima facie case under the familiar burden-shifting framework set forth in *McDonnell*").

### C. Lanier fails to state a claim for retaliation in violation of Title VII.

Last, the City argues that Lanier's claim for retaliation must fail because he has not adequately pled that he engaged in any protected conduct that motivated the occurrence of an adverse employment action. Lanier responds by copying some of the allegations in his amended complaint and asserting that he "clearly pled that he made a complaint in writing that the City was engaging in practices that violated Title VII and that he was retaliated against because of

this." (*See* Resp. 16, ECF No. 11.) On this claim also, the Court agrees with the City.

To establish a prima facie case of retaliation, the Plaintiff must establish that: (1) the Plaintiff engaged in statutorily protected expression, (2) the Plaintiff suffered an adverse employment action, and (3) there was a causal connection between the protected expression and the adverse employment action. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

The Eleventh Circuit has explained that a plaintiff satisfies the causal connection "element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999); *see also Sumbak v. Eaton Corp.*, No. 21-11106, 2022 U.S. App. LEXIS 15510, at *13, 2022 WL 1928777 (11th Cir. June 6, 2022) ("Under our precedent, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." (cleaned up)). Here, even assuming that Lanier engaged in statutorily protected expression—something which is seriously in doubt—there is nothing in his allegations that would allow the Court to infer that any adverse employment actions resulted from that expression.

The amended complaint includes various general allegations as to Lanier's purportedly protected expression, such as the statement that Lanier "specifically informed the City of his belief that the City was engaging in the exact type of racial bias that is prohibited by Title VII." (*See* Am. Compl. ¶ 74, ECF No. 1-1.) These allegations, which are devoid of all critical details, such as when they were made, to whom, and what exactly was said, render it impossible for the Court to conclude that Lanier was retaliated against for engaging in protected activity. Indeed, Lanier does not allege that the person or persons responsible for any of his adverse employment actions were aware of his conduct.

Lanier's only non-ambiguous, non-conclusory allegations on this issue are that "[o]n May 26, 2022, [he] complained of th[e] disparate and racial/national origin discrimination . . . to the City Mayor and other agencies[,]" that "[a]fter his complaint, he was retaliated against by Chief Morales[,]" and that "[o]n July 6, 2022, Wanda Jean-Baptiste and [he] were issued reprimands recommending '[d]emotion] and '[s]uspension of hours and transfer out of internal affairs." (*See id.* ¶¶ 77–80.) But, again, Lanier renders it impossible for the Court to plausibly infer causation, as he does not allege that Chief Morales was aware of the complaint he made on May 26, 2022, or that

the persons responsible for the reprimand he suffered on July 6, 2022, were aware of that complaint either. And, while Lanier seems to put much weight on the contents of an email attached as an exhibit to his amended complaint, asserting it shows him "explicitly informing the City of the illegal discrimination[,]" that email is dated September 29, 2022, which is significantly after the date when Lanier states he was reprimanded. (*See id.* ¶ 84; *see also* Ex. F to Am. Compl., ECF No. 1-1.)

In short, the amended complaint contains no factual allegations that would support a claim of retaliation under Title VII.

### 4. Conclusion

For the reasons stated above, the Court **grants** the City's motion to dismiss. (**Mot., ECF No. 7**.) The Court dismisses Lanier's amended complaint **with prejudice** because he has failed to state his claims under Rule 12(b)(6).

Additionally, the Court dismisses Lanier's amended complaint **without leave to amend**. Lanier requests leave to amend as an afterthought, as an alternative to dismissal in his response to the City's motion, making the request both procedurally defective and lacking in substantive support under Eleventh Circuit Precedent. *See Newton v. Florida*, 895 F.3d 1270, 1277-78 (11th Cir. 2018) (reaffirming the rule that a request for leave to amend is not properly raised if embedded in a memorandum in opposition to a motion to dismiss); *see also Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend."). The Court will not now afford Lanier another bite at the apple where he declined "to follow the well-trodden procedural path toward amendment." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 Fed. App'x 925, 930 (11th Cir. 2016).

Finally, the Clerk is directed to **close** this case.

**Done and ordered** at Miami, Florida on January 4, 2024.

                                                           Robert N. Scola, Jr.
                                                           United States District Judge